Albert H. Btjschmann, J.
The defendant herein was indicted for criminal possession of a dangerous drug in the fourth degree. He now moves for an order to suppress one and a-half ounces of marijuana found in his hand luggage by a customs agent.
On December 25, 1970 defendant was a passenger at Kennedy Airport awaiting a flight to Puerto Rico for the holidays. A Pan American employee, alert to the possibility of possible hijacking, became suspicious of defendant for some unexplained reason and confided his suspicions to Customs Agent Bunze. This customs agent was stationed nearby for the purpose of searching passengers for concealed weapons on outgoing flights, a security measure instituted by the airlines in the wake of plane hijacking. Agent Bunze approached defendant, spoke to him about weapons and searched him. No permission was given by defendant for this search. Finding nothing, the agent then examined defendant’s hand luggage and discovered one and a-half ounces of marijuna. This drug was confiscated. A New York City police officer was called and defendant arrested for possession of narcotics.
The agent testified at the hearing that he had not received any information about guns or contraband from the Pan American employee or any other facts which might have aroused his suspicions. Further, he, himself, observed nothing unusual about the defendant, and the search was merely a precautionary measure as part of his duty under the “ Air Marshal ” program. Additional testimony revealed the fact that the agent tried to search as many passengers as possible for concealed weapons on this particular flight as a security precaution.
The People conceded that the search of defendant was not based on probable cause. However, they maintain that the search did not violate the Fourth Amendment because Federal statutes granted the officials authority to search with less than probable cause. These statutes fall into two broad categories: (1) “ border ” or “ custom ” Federal statutes; (2) newly created “ air marshal ” Federal statutes.
Turning to the first category — the People allege that historically customs officials have broad authority to search without a warrant (United States v. Marti, E.D.N.Y. 68 C. R. 149; Carroll v. United States, 267 U. S. 132). The cases seem to be in agreement that probable cause is not required in these searches. *153 (Murgia v. United States, 285 F. 2d 14; United States v. Beckley, 335 F. 2d 86, 89.) What constitutes sufficient cause for search, however, is not clearly defined in these cases and ranges from “mere suspicion of possible illegal activity” (United States v. Glaziou, 402 F. 2d 8, 12 [C.A. 2d], cert. den 393 U. S. 1121) to a requirement of 11 real ’ ’ suspicion supported by ‘ ‘ articulable ” facts (United States v. Johnson, 425 F. 2d 630, 632). This court, therefore, must agree that probable cause is not required for customs searches.
However, defendant contends that even if this be so, the search of Agent Bunze was outside the scope of his authority and that customs officials have no right to examine the person of an outgoing passenger on a domestic flight.
Examining the relevant statutes, this court finds that uniformly they restrict the duties of customs officials to merchandise or people entering this country. Thus, section 482 of title 19 of the United States Code (“ stop, search, and examine * * * any person * * * or * * * merchandise * * * introduced into the United States ”); section 1496 of title 19 of the United States Code (“an examination of the baggage of any person arriving in the United States ’ ’; italics added); section 1499 of title 19 of the United States Code (“ imported merchandise * * * to be inspected ”; italics added); section 1582 of title 19 of the United States Code (“ search * * * by authorized officers * * * persons coming into the United States from foreign countries ”; italics added) are typical. In brief, this court has failed to find any cases that favor the proposition that customs officials have the general right to search a person as he is about to leave on a domestic flight. (See United States v. Marti, supra.) Nor did the fact that marijuana was found change the picture, since the statute that gave additional authority to the Bureau of Customs in narcotics matters, limits that authority to those circumstances when the officer has 1 ‘ reasonable grounds to believe that the person to be arrested has committed or is committing such violation (U. S. Code, tit. 26, § 7607; United States v. Rubio, 404 F. 2d 678, cert. den. 394 U. S. 993). No allegation to that effect was made in this case.
Taking all these facts into account, this court can only hold that the officer exceeded the scope of his authority as a customs official in making a search of this defendant under these circumstances.
The People next advance the theory that, since the agent was acting in the capacity of “air marshal”, he did not require probable cause to search.
*154 Research indicates that the air marshal program was created by executive power on September 11, 1970. Its purpose was to organize a new security agency to deal with the ever-growing problem of armed hijacking of civilian aircraft. This executive order merely created the agency under existing presidential authority (see U. S. Code, tit. 18, § 3053; IT. S. Code, tit. 28, § 570) but did not define its powers. If then, the air marshal has broader authority than the customs agent, these powers must spring either from the specific crimes that gave rise to the agency’s creation or the general duties of the office of air marshal itself.
The two crimes that this agency seeks to prevent are the new crime of “ aircraft piracy ” (IT. S. Code, tit. 49, § 1472, subds. [i] to [n]) and kidnapping by ‘ ‘ transportation in interstate or foreign commerce ” (IT. S. Code, tit. 18, § 1201).
An examination of the aircraft piracy statute shows no provision dealing with search; nor is there any broad 1 ‘ emergency ” power authorized. The same is true with respect to the kidnapping statute. In the absence of explicit authority, this court must then adhere to Federal standards which require probable cause.
As regards the duties of a marshal, two Federal regulations are appropriate. The first authorizes marshals to ‘ ‘ make arrests without warrant for any offense against the United States committed in their presence * * * if they have reasonable
grounds to believe that the person ” committed the violation. (U. S. Code, tit. 18, § 3053.) The second statute grants them the right to ‘1 exercise the same powers which a sheriff of the State may exercise” (U. S. Code, tit. 28, § 570). Neither of these statutes provides authority for the provision that an air marshal may search without probable cause, since both Federal standards (Aguilar v. Texas, 378 U. S. 108; Spinelli v. United States, 393 U. S. 410; Draper v. United States, 358 U. S. 307) and New York standards (People v. Loria, 10 N Y 2d 368; People v. Hendricks, 25 N Y 2d 129) require this.
Therefore, since the facts fail to show probable cause and the People have failed to cite any relevant Federal statute which might waive this requirement, it is the opinion of this court that the search of the defendant was unlawful and in violation of the Fourteenth Amendment. Consequently his motion to suppress the seized narcotic is granted.