William C. Brennan, J.
Defendant moves for an order suppressing one ounce of marijuana found in his possession by a security agent at Kennedy Airport.
A hearing was held on December 29, 1971. The People’s sole witness was customs officer Francis S. Mackay. Defendant, a *104 young college student, testified on his own behalf. Based on their testimony and the evidence submitted, the court finds the following to be the facts:
On March 11, 1971 defendant was a passenger at Kennedy Airport bound for Puerto Rico. His flight was scheduled for 11:30 p.m. Shortly before takeoff, the passengers were advised to proceed to a departure area and present their tickets. Defendant and some 300 other passengers moved out of the main terminal into a jet-way which, in turn, led out-of-doors to the airplane. The passengers lined up in this jet-way, presented their tickets and slowly moved on board the plane. As they did so, airport security agents (customs officials) conducted a predeparture inspection for concealed weapons. (U. S. Code, tit. 49, § 1472.)
This inspection consisted of the following:
1. Calling passengers’ attention to notices which were prominently displayed about the departure area. These notices, requested by the Federal Aviation Administration, indicated that it was illegal to carry weapons on board aircraft or to interfere with flight crews, and warned that.passengers’ baggage was subject to search.
2. A physical examination of baggage (several narrow tables having been set up for this purpose).
3. The presence of a metal detecting device, called a magnetometer, through which passengers had to pass.
4. And, most important, an inquiry by two customs officials who, in some cases, would frisk passengers for concealed weapons and explosives.
The defendant moved forward with the line of passengers and approached customs agent Mackay. This officer noticed a large bulge in the left pocket of defendant’s winter overcoat and inquired as to “what he had in his pocket ”. Defendant replied “ a pair of gloves ”.
The examiner then patted down the coat with his hands and requested the gloves. Defendant complied and handed them to the customs official. The gloves were unrolled and a clear plastic bag was found containing what appeared to be marijuana. The defendant was then taken out of line and subsequently arrested for possession of said marijuana.
The defendant now seeks to suppress, on the ground that the frisk constituted a search in violation of the Fourth Amendment. The People oppose and seek to uphold validity of the search on two basic grounds:
1. That defendant consented to the search;
*105 2. That the action of the agent at most constituted a frisking and such conduct is permissible under the “ stop-and-frisk ” doctrine of Terry v. Ohio (392 U. S. 1).
Turning to the People’s first contention, the issue of consent, it is clear that one does not waive his constitutional rights by purchasing a plane ticket. In the absence of specific Federal authority expanding the power of airport security agents, this court must apply the same basic rules that would govern any other form of search (People v. Sortino, 68 Misc 2d 151). In brief, the Government has no greater right to search at an airport than it does at one’s home. Both areas come within the same constitutional protection (U. S. Const., 4th Arndt.).
Such being the case, well-established law indicates that a search is reasonable if conducted:
1. Pursuant to a legal warrant (Jones v. United States, 362 U. S. 257; People v. Givens, 21 N Y 2d 929).
2. By virtue of defendant’s consent (Bumper v. North Carolina, 391 U. S. 543; People v. Whitehurst, 25 N Y 2d 389).
3. Upon probable cause that would support an arrest or is incidental to such arrest (Preston v. United States, 376 U. S. 364; People v. Loria, 10 N Y 2d 368).
4. By virtue of some well-recognized limited exception such as:
a. contraband lying in open and plain view (United States v. Lee, 274 U. S. 559; People v. Lombardi, 18 A D 2d 177, affd. 13 N Y 2d 1014);
b. “stop-and-frisk” doctrine (Terry v. Ohio, supra; People v. Rosemond, 26 N Y 2d 101);
c. direct result of an “inventory ” search (Cooper v. California, 386 U. S. 58; People v. Sullivan, 29 N Y 2d 69).
In the case before us, the People advanced the theory of consent. It is submitted that the defendant was aware of the possibility of search, by virtue of the warning notices, the magnetometer detection device and the actual frisking of passengers; further, that he acquiesced by voluntarily submitting himself to be frisked without objection. Thus, the People argue, the defendant by his own actions gave implicit consent to be examined and frisked by the agent (Carroll v. United States, 267 U. S. 132).
Consent to a search involves relinquishing a constitutional right and should not be “lightly inferred” (United States v. Como, 340 F. 2d 891, 893 [2d Cir., 1965]). It is the weakest possible basis for a search and must be shown to have been freely and voluntarily given (People v. Gonzalez, 50 Misc 2d *106 508). The burden of proof is on the State (People v. Austin, 53 Misc 2d 963) to show by clear and convincing evidence that such conduct was freely and voluntarily given (People v. Whitehurst, supra).
Hence, the theory of implicit consent, while plausible on the face, cannot be said to have met the required standard of proof. Defendant’s mere presence and silence at the gateway is' simply too ambiguous to constitute the clear and convincing evidence needed to show that consent was “freely and voluntarily given” (Bumper v. North Carolina, supra, p. 548). In addition, the People’s theory of implied consent is further weakened when we consider the fact that defendant was in the presence of Federal officials who might have had a coercive effect on his actions or lack of them (Bumper v. North Carolina, supra; People v. Overton, 24 N Y 2d 522).
Based, then, on the above, this court must reject the People’s first contention.
The People’s second point is that the patting of the coat pocket constituted at most a frisk and was a valid exercise of the State’s police power under the doctrine of Terry v. Ohio (supra).
The People argue that public safety demands an effective method of verifying the presence (or absence) of concealed weapons, yet concede the reality of constitutional limitations. They further argue that the “ stop-and-frisk ” principle enunciated under Terry v. Ohio (supra) provides a solution to this problem by permitting airport security personnel to frisk for weapons under proper circumstances without infringement of the Fourth Amendment. Such a limited search has been characterized as a “ limited patting of the outer clothing ” (Sibron v. New York, 392 U. S. 40, 65) and is clearly differentiated from a “ full-bloom search ” for evidence of crime (Terry v. Ohio, supra, p. 19). Such a frisk, it is contended, may be made on less than probable cause and might be utilized in situations where the inspecting officer reasonably suspects “ danger of life or limb” (Sibron v. New York, supra, p. 66) or finds it necessary for the “protection” of himself or others and is “ confined in scope to an intrusion reasonably designed to discover guns * * * or other hidden instruments ” (Terry v. Ohio, supra, p. 29).
In summary, the People maintain that, though security agents may not conduct a general search without probable cause, they may frisk for weapons if they have reasonable grounds to believe *107 that arms are being concealed (United States v. Lopez, 328 F. Supp. 1077).
This court finds the basic contention reasonable. In light of the current wave of plane hijackings, kidnappings and other crimes caused by concealed arms, it is undoubtedly true that adequate security measures are now necessary in our Nation’s airports. Further, there is no doubt that on occasions, air safety will best be served by purposeful frisking conducted by knowledgeable agents. Indeed, in some cases such a frisking might be an absolute necessity (i. e., when there is suspicion of plastic explosives or nonferrous weapons). However, conceding the fact that frisking might be utilized in airport situations based on the Terry and Sibron “ stop-and-frisk ” doctrine (supra), there still remains the basic problem of what constitutes reasonable grounds for this limited search. In connection with this, the Supreme Court, in Terry, observed (at p. 30): “ that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others’ safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons ”. Such a search is a reasonable search under the Fourth Amendment. (Terry v. Ohio, supra, p. 31.)
The test, then, under Terry (392 U. S. 1, supra) might be summarized as requiring the identification of officials, following an observation on their part of unusual conduct, and a subsequent interrogation which, in turn, might furnish reasonable grounds for a belief that this particular suspect is armed or might endanger the safety of others.
Applying these guidelines to the facts at bar, this court concludes :
1. That the defendant was aware that he was dealing with a customs official who was validly empowered to question him as to whether or not he possessed a concealed weapon.
2. That the bulge in defendant’s pocket was unusual enough, under the circumstances, to warrant inquiry.
3. That such inquiry, although minimal, was made.
*108 4. That no reasonable grounds were shown to sustain a belief that this particular defendant was armed or constituted a danger to the safety of others or even created a substantial possibility of danger.
In connection with point 4, the courts, in discussing the problem of danger, have said: “ This probability is less than that required to arrest but more than that which would support a surmise or hunch.” (United States v. Lopez, 328 F. Supp. 1077, 1093, supra.)
Here, the frisk was justified only on the grounds of conjecture or a hunch. There were no facts other than a bulging coat pocket which might indicate the presence of arms or potential danger. There was no reliance on the profile or magnetometer (United States v. Lopez, supra; United States v. Lindsay, 451 F. 2d 701) and no unusual nervousness or suspicious mannerisms which might alarm a prudent official (People v. Valentine, 17 N Y 2d 128) nor any other grounds to justify “ reasonable suspicion”. (People v. Taggart, 20 N Y 2d 335.) This being so, the court must hold that there was not sufficient cause to frisk the defendant, even under the lower standards of the ‘ ‘ stop-and-frisk ’ ’ doctrine.
Based upon the foregoing, this court makes the following findings:
1. That there was not sufficient probable cause to justify a lawful general search.
2. That there was not reasonable cause to justify a limited or lesser search under the “ stop-and-frisk ” exception.
3. The seizure of the plastic bag containing marijuana was illegal.
Therefore, the court must .conclude that the search was in violation of defendant’s rights under the Fourth Amendment of the United States Constitution and, hence, the seizure of marijuana must be suppressed as being the fruit of an illegal search; and the motion is granted in all respects.