Fuchsberg, J.
Defendant Esposito, a 40-year-old family man *158 with no prior criminal record, was found guilty of stealing four men’s neckties out of luggage he loaded aboard an outgoing international flight at Kennedy Airport and given a conditional discharge. Three other defendants, also baggage handlers, were found innocent at trial. Appellate Term upheld the conviction, without opinion. Esposito appeals on the grounds that he was searched without probable cause.
The incident arose out of an on-going concern on the part of airlines officials and police over thefts from the baggage of outgoing and incoming passengers on international flights at Kennedy. Apparently the officials suspected that baggage handlers who load and unload such luggage may have been involved in these thefts. Proof was hard to obtain, however, since baggage loaders, when working, are hidden from view inside the planes. The police, unable to search loaders without some grounds for probable cause, enlisted the aid of customs officials in the mistaken belief that the latter possess special powers to search which could be of use here.
On the day of his arrest, Esposito and a team of loaders in his charge put baggage aboard an outgoing airliner. The police, in the person of one Detective Elenko, accompanied by a customs official, watched from an observation window, but were unable to see the loaders inside the plane well enough to describe their activities. Another team of customs officials watched from a nearby gate, also without success. There is no evidence that either the police or customs men had any particular reason to suspect Esposito or his loaders especially; the observations were directed generally.
Nevertheless, when the loaders left the plane and headed for the terminal building, the team of observers at the window radioed the team at the gate to stop them. Esposito testified that he and his men left the plane by different exits (there may be as many as four different loading bays in one plane) and approached the building in a loosely strung out group. When the customs men approached and said "Stop, United States Customs”, the other loaders stopped, but Esposito kept on walking into the building, past his supervisor’s office, and on toward the locker room and cafeteria. A customs man stopped him there and asked him to come outside. He did so, and joined the officers and other defendants. The customs men then searched all four loaders.
The proof as to the search of Esposito is conflicting. He testified that, when asked if he had anything on his person, he *159 told the customs man he had four ties and that they were stuffed in the front of his half-unbuttoned shirt. The customs man testified to finding the ties in the back of Esposito’s shirt. Esposito said he was searched before he could answer the customs man’s question, the answer and the finding of the ties occurring simultaneously.
Esposito further testified: that two Samsonite bags had broken open while being thrown into the plane; that he had locked them by kneeling on them and pressing in a particular way necessary for closing that brand of luggage; that after he had loaded about forty bags, he discovered the ties lying on the floor of the plane and had stuffed them in his shirt, it being his job, as "lead man”, to return such property to his supervisor; that he had not heard the customs men say "stop”; that he had started toward the supervisor’s office to turn in the ties; that he then observed that the supervisor was not in his office and, therefore, had been heading toward the cafeteria and locker area, when one of the officers stopped him.
There was testimony at the trial by two passengers on the flight Esposito had loaded to the following effect: that the ties were their property; that they had identified the ties upon request while inside the plane; that they had supervised the retrieval of their luggage which was found to be locked; and that nothing else in the luggage had been disturbed.
Trial in the Criminal Court of the City of New York was held before a Judge sitting without a jury. At the conclusion of the prosecution’s case, after the customs officials had testified, and before Esposito had taken the stand, upon the defense moving to dismiss, the Judge stated that Esposito’s story, as recited to him by the customs official, was "pathetic” and "incredible”. Esposito also challenges this as error, together with his illegal search contention.
The initial prosecution in this case rested on the notion that customs officials do not need probable cause in order to search. The utilization of the customs officials by the police in this case was apparently based on that premise, which we hold to be an incorrect one. Indeed, the People themselves no longer urge it on this appeal.
That is because the "border search” exception to the requirement of probable cause accorded to customs officials by statute (US Code, tit 19, §§ 482, 1496, 1582) is a limited power. Its purpose is to permit such officials to search for contraband coming into the country without payment of duty or in *160 contravention of statutory prohibitions. It does not extend to searches of baggage going out of the country upon which no duty is payable and on which no prohibitions are placed. (See United States v Markham, 440 F2d 1119; Stassi v United States, 410 F2d 946; People v Sortino, 68 Misc 2d 151; United States v McGlone, 394 F2d 75; United States v Murray, 354 F Supp 604; cf. United States v Almeida-Sanchez, 413 US 266.) As these cases make clear, the limited exception was granted to customs officials for a particular purpose; it may not be used to circumvent the constitutional requirement of probable cause placed upon police officers.
It is first necessary, since they were not acting pursuant to their special powers, to determine the status of the customs officers who searched Esposito and the other defendants. For the suppression of evidence acquired during an illegal search is a measure intended to curb potential excesses by law enforcement agencies; it does not apply to searches conducted by civilians. (People v Horman, 22 NY2d 378, cert den 393 US 1057.) Where civilians, or law enforcement officers possessed only of special powers, act as agents of the police, however, the full panoply of constitutional provisions and curative measures applies, and that is the case here. (Corngold v United States, 367 F2d 1; McCormick, Evidence [2d ed], § 168, pp 372-373.)
The customs men here acted at the instigation of the police and were supervised by them. The signal to intercept Esposito and his men was given by a regular police detective, who was apparently in charge of the entire operation. The requirement of probable cause therefore applies.
The People now argue that the customs officers did have probable cause to search Esposito, and the courts below agreed. We are able to reverse a finding of probable cause below only if it cannot be found to exist on any view of the evidence. (People v Leonti, 18 NY2d 384, cert den 389 US 1007.) In our opinion, it cannot be found under the facts here.
Prior to the search of Esposito and the other defendants, there was no evidence against any of the men individually. Probable cause generally requires a reasonable belief on the part of the police that a particular individual or individuals have committed a crime or are about to do so. There must be more than a mere suspicion. (Terry v Ohio, 392 US 1; Adams v Williams, 407 US 143.) Here there was no more than suspicion; in fact, the officers assumed that they did not need anything more, relying on their mistaken belief that customs *161 officials may search under these circumstances without probable cause.
The only element of the case which, conceivably, might be utilized to try to make out probable cause is the fact that Esposito did not stop instantaneously when a customs official said "stop”. Esposito testified that he did not hear the command. His behavior — walking into the building in the direction of the supervisor’s office, and then walking on toward the locker and cafeteria areas after finding the supervisor absent —was just as consistent with innocence as with an inference of guilt. As we said very recently in People v Davis (36 NY2d 280, 282), "Where the observed acts of the defendant were susceptible of various innocent interpretations * * * where the behavior was at most equivocal and suspicious, and where there was no supplementation by any additional behavior raising the level of inference from suspicion to probable cause, more must be shown to form the basis for a warrantless arrest and an incidental search [citations omitted]”.
The cases cited for probable cause by the People only serve to highlight this distinction. In People v Rosemond (26 NY2d 101), a police officer saw two men enter an apartment building empty-handed and return carrying packages and shopping bags. When questioned, they gave conflicting and evasive answers. Taken to the place where they said they obtained the goods, they and the police found signs of a fresh burglary, whereupon they were searched. In People v Taggart (20 NY2d 335), police received information that a man of exact description was standing on a particular street corner waving a gun. When the police arrived at that location, they saw a man fitting the description, though no gun was visible, standing in the midst of a group of children. Under these circumstances, an immediate search, which produced a gun, was upheld.
The simple recitation of the facts in these cases serves to indicate that Esposito’s behavior in no way provided such cause for a search of his person. Since, on these facts, his motion to suppress the ties as evidence should have been granted, it is not necessary for us to reach the legal issue raised by the Trial Judge’s expression of prejudgment of Esposito’s testimony, unwise as it may have been.
Accordingly, the order of the Appellate Term affirming the judgment of conviction should be reversed, the judgment of conviction vacated and the information dismissed.
*162 Chief Judge BreiteL' and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
Order reversed, etc.