OPINION OF THE COURT
Joseph J aspan, J.
The line which marks the boundary between permissible police action and unwarranted intrusion in violation of Fourth Amendment rights is frequently thin and not readily distinguishable. The need for on-the-spot decisions by law enforcement officials does not afford them the luxury of a contemporaneous in-depth analysis or consultation with counsel. It is reserved to the courts to make a retrospective judgment and to consider the multitude of variables in weighing the interests of society vis-á-vis the inherent rights of a citizen.
Such an issue is presented on defendant’s motion to suppress physical property which forms the basis for charges of criminal possession of a weapon in the third degree, two counts of criminal possession of a controlled substance in the eighth degree and criminal possession of marihuana in the fourth degree. Defendant also moves to suppress "as fruits of the poisonous tree” postarrest statements attributed to him.
At about 10:30 p.m. on the night of December 1, 1978, two police officers on routine patrol in the parking lot of a shopping center in Bay Shore observed the defendant walking erratically toward a car. Their interest was heightened by the fact that he was singing loudly and waving a walking stick.
The defendant is a 250-pound male, aged 27, who on this winter night was wearing an earring, a suede hat with a wide brim, a vest, checkered shirt, blue jeans and carrying a large wooden eagle.
The total impact of the defendant’s conduct and presumably his appearance prompted the officers to intercept and stop him after he had entered the car, put it in motion, and started to back up.
Upon request, the defendant exited his car and produced his license, registration, and insurance card. He was then asked whether he was intoxicated or sick. Defendant replied he was "only slightly high” and was on his way to Lala’s Bar on Sunrise Highway and was well enough to drive his vehicle. The defendant was concededly not belligerent.
One of the experienced police officers (Dowling) concluded *145 from his observations including those as to the defendant’s eyes, speech described as "somewhat slurred” and the odor of his breath, that defendant was inebriated and arrested him for driving while intoxicated (Vehicle and Traffic Law, § 1192, subd 3).
The other police office (McCann) made no observations as to defendant’s eyes, his breath or speech before the arrest, but nonetheless concluded from defendant’s conduct that he was intoxicated. The defendant was not given any of the usual field tests such as touching his nose, picking up a coin, or walking a straight line.
The search of defendant’s person as an incident to the arrest produced a knife as well as the weapon charged in the indictment. A search of the car at the scene resulted in the seizure of small quantities of marihuana, amphetamines, and cocaine.
The defendant was transported to the third squad and advised of his "rights”, which he waived. He answered questions and agreed to take a breathalyzer test. The test was administered at about 11:45 p.m. and produced a reading of .01. A reading of .10 is the minimum to support the charge of driving while intoxicated (§ 1192, subd 3). At 2:00 a.m. a urine test was given and it also "proved negative”.
Accordingly, the driving while intoxicated charge was later withdrawn and the instant indictment is limited to the products of the afore-mentioned searches.
If the police action had been limited to an inquiry as to the defendant’s intention and ability to drive, the intrusion upon defendant’s freedom would be justified under the principles enunciated in People v Ingle (36 NY2d 413) because public safety was directly involved. (People v Abramowitz, 58 AD2d 921.)
But the defendant was also arrested and searched and it is this action which must be carefully examined.
No attempt is made to justify the search on the basis of "stop and frisk” (CPL 140.50) and indeed there was no threatening action involved or suggested. It was conducted only as an incident to the arrest and can only be sustained if there was probable cause for the arrest (CPL 140.10, subd 1, par [b]).
"Probable cause generally requires a reasonable belief on the part of the police that a particular individual or individuals have committed a crime or are about to do so. There must *146 be more than a mere suspicion.” (People v Esposito, 37 NY2d 156, 160.)
A threshold question is whether the defendant can, in any event, be charged with driving while intoxicated for acts committed exclusively on a privately owned parking lot serving a shopping center.
Subdivision 3 of section 1192 of the Vehicle and Traffic Law provides that, "No person shall operate a motor vehicle while he is in an intoxicated condition.”
While this section does not limit or define the geographical area of the proscribed conduct, an omnibus provision § (§ 1100) applies to this and to all Vehicle and Traffic Law sections set forth under title 7, "Rules of the Road”. It reads as follows:
"(a) The provisions of this title apply upon highways and upon private roads open to public motor vehicle traffic except where a different place is specifically referred to in a given section.
"(b) The provisions of this title relating to obedience to stop signs, flashing signals, yield signs, traffic-control signals and other traffic-control devices, and to one-way stopping, standing, parking and turning regulations shall also apply to the parking area of a shopping center for which the legislative body of any city or village, or the town board of any town, has adopted any local law, ordinance, rule or regulation ordering such signs, signals, devices, or regulations.”
Subdivision (a) is clearly applicable to and limits enforcement of section 1192 to highways and private roads open to public motor vehicle traffic.
The common denominator for both public highways and private roads is use for "vehicular traffic” (Vehicle and Traffic Law, §§ 133, 134, 140; People v County of Westchester, 282 NY 224), a characteristic not readily attributable to a parking lot.
It is also evident from the structure of section 1100 that a special and additional subdivision "(b)” was required to embrace the parking area of a shopping center within the traffic control provision of title 7. The very language used excluded, by omission, coverage of the subject offense of driving while intoxicated.
There are reported cases which rule that section 1192 applies to a parking lot (People v Rue, 166 Misc 845; People v Taylor, 202 Misc 265; Matter of Manley v Tofany, 70 Misc 2d 910), but these holdings are neither consistent with the statu *147 tory limitations nor more recent appellate decisions involving other sections of the Vehicle and Traffic Law.
In rulings relative to section 1210 of the Vehicle and Traffic Law, the unattended motor vehicle statute set forth in title 7, the courts have held that a parking lot is not a highway or a private road open to public motor vehicle traffic. (Beck v Coby, 52 AD2d 559; Podstupka v Brannon, 81 Misc 2d 338, affd on opn at Trial Term 54 AD2d 692; State Farm Mut. Auto. Ins. Co. v Mavroidakos, 63 AD2d 933.)
Accordingly, I hold that a parking lot is not a public highway or private road within the meaning of section 1100 of the Vehicle and Traffic Law and conduct limited to that area does not constitute a violation of the driving while intoxicated statute, section 1192.
However, Esposito (supra), in defining "probable cause” applies the reasonable belief principle to those who have committed a crime or are about to do so.
In the instant case the police were legally upon the premises by reason of the landlord’s consent and appropriate approval by the local government. When they stopped and spoke with the defendant, he advised them that he was about to go to Lala’s Bar on Sunrise Highway, a trip necessarily involving movement on and across a public highway. It is not at all certain that the arrest was based upon this prospective action rather than the limited motion of defendant’s car within the parking area. Even if this issue were resolved in favor of the People, the arrest and search were nevertheless invalid.
The wide discrepancy between the officers’ conclusions and the results of the test administered 90 minutes later reflect adversely upon the weight to be given to the subjective judgment. It cannot be said that there was a rational and articulable basis upon which a prudent man under the circumstances could find the necessary predicates for an arrest for driving while intoxicated.
As a matter of law and fact, the defendant was not intoxicated when arrested.
Subdivision 2 of section 1195 of the Vehicle and Traffic Law provides:
"The following effect shall be given to evidence of blood-alcohol content, as determined by such tests, of a person arrested for a violation of section eleven hundred ninety-two:
*148 "(a) Evidence that there was .05 of one per centum or less by weight of alcohol in such person’s blood shall be prima facie evidence that the ability of such person to operate a motor vehicle was not impaired by the consumption of alcohol, and that such person was not in an intoxicated condition”. (Emphasis added.)
The average rate of absorption for alcohol in the body is estimated to be .015% per hour (see Erwin, Defense of Drunk Driving Cases, ch 15) and therefore the test at 12:00 p.m. fairly and accurately reflected defendant’s condition at the time of arrest at 10:30 p.m.
The balance scale in which we weigh the respective public and private interests tilts heavily in favor of the latter. The extent of the intrusion upon the freedom of the defendant was not warranted by the facts.
It could be argued that the police could at least have arrested the defendant for driving while impaired, a violation under subdivision 1 of section 1192. This would involve a narrower gap between the subjective conclusion and the results of objective tests. The defendant had, after all, admitted that he had been drinking earlier in the day and his conduct could lead a prudent man to believe that he was as stated, "a little high”, though not intoxicated.
However, the general rule is that an arrest for a traffic violation, will not, without more, authorize a frisk for weapons regardless of whether the person arrested is taken into custody or not. (People v Pollaci, 68 AD2d 71; see People v Marsh, 20 NY2d 98; People v Adams, 32 NY2d 451; People v Troiano, 35 NY2d 476, 478 [concurring opn Rabin, J.].) Exceptions are made only where the arresting officer has probable cause to believe the arrestee has also committed a crime or has reason to fear an assault (Marsh, supra). Neither is applicable to this case.
Further, Esposito (supra) is limited to cases where the target is about to commit a crime. Driving while impaired is an offense but not a crime and the prospective conduct does not come within the ambit of the rule. The arrest could not be so justified.
The motion of the defendant to suppress the physical items seized upon a search of his person and his car is granted. The statements attributed to the defendant after his arrest are also suppressed.