OPINION OF THE COURT
Ann B. Dufficy, J.
In this motion to suppress the defendant’s statement, the issue presented to the court is whether a statement elicited by *228 a private citizen from a defendant in custody in the absence of Miranda warnings must be suppressed, where the private citizen questions the defendant in tandem with, or as a "joint-interrogator” with the police.
The court finds the credible and relevant facts to be as follows:
On July 28, 1986 at approximately 10:40 a.m., the complainant, George Buskey, surprised a burglar while opening his place of business at 1612 Central Avenue.
After summoning the police, Buskey went on the roof of the premises with one Police Officer Richard Angley, where Bus-key observed and pointed out the defendant, hiding behind a dumpster in the street below.
Minutes later the defendant was apprehended, placed in custody and brought back to the scene in a radio patrol car where a confirmatory showup was held.
Upon identifying the defendant, Buskey stated, in substance, that he would ask the defendant what the defendant had done with his stuff. Officer Angley, rather than responding to the complainant, turned to the defendant and asked the defendant what he had done with Buskey’s stuff.
The defendant merely cursed at the officer. The complainant, himself, then proceeded to repeat the question and asked the defendant, in substance, what he had done with the property. The defendant then replied, in substance, to the complainant that "[i]f I knew it was you, Mr. Buskey, I wouldn’t have done it”. Miranda warnings had not yet been administered to the defendant.
THE LAW
Initially, the court notes that while the defendant’s incriminatory reply to Buskey was not directly responsive to the question posed, the court finds, firstly, that the said response was elicited by the question posed and, secondly, that the inquiry made was reasonably likely to evoke an incriminatory response from the defendant. Thus, the defendant’s statement to Buskey cannot be said to have been spontaneously made, and rather is the product of the "express questioning” (see, People v Huffman, 61 NY2d 795; People v Bryant, 59 NY2d 786).
The issues in the case arise with regard to the level of police involvement in the interrogation of the defendant, and the *229 role of the private citizen, Buskey, vis-á-vis the defendant and the police at the time of the interrogation and the events leading up to it.
In this regard, while it is well established that the constitutional protections against self-incrimination do not ordinarily apply to confessions elicited by private individuals (People v Horman, 22 NY2d 378), where the private conduct becomes "so pervaded by governmental involvement”, such conduct has been held to lose its private character and invoke "the full panoply of constitutional protections” (People v Ray, 65 NY2d 282, 286; see also, Corngold v United States, 367 F2d 1).
Thus, the law provides that "[t]he actions of private individuals * * * do become subject to scrutiny for violations of constitutional limitations when those individuals act as agents of the government or when government officials participate in the act” (People v Warren, 97 AD2d 486, 487; see, CPL 60.45 [2] [b]; People v Esposito, 37 NY2d 156).
In the present case the interrogation of the defendant occurred after the complainant had initially summoned the police and assisted in the apprehension and identification of the defendant. Thus, unlike the situation in People v Bracey (98 Misc 2d 346, affd sub nom. People v De Pasquale, 75 AD2d 751), wherein the private citizen was acting as a "concerned relative” of the defendant, here, the complainant was cooperating and clearly participating with the police throughout the incident and was in a hostile position in relation to the defendant at the time of the interrogation (People v Warren, supra).
Thereafter, during the questioning, Police Officer Angley was privy to the interrogation of the defendant by the "private citizen” and was in a position to prevent it but, instead, acted affirmatively and in cooperation with the complainant. Thus, here, rather than delaying questioning until after the administering of the Miranda warnings, the police officer joined with the.complainant and engaged in a type of "joint-interrogation” of the defendant.
Based upon the foregoing, the court concludes that the defendant, who had initially cursed in response to the interrogating officer’s question, did not "knowingly, intelligently or voluntarily” waive his right to remain silent under these circumstances. Rather, the defendant was induced to make an incriminatory statement by the interrogation of the officer and the complainant, who this court finds were participating *230 in questioning the defendant in tandem in a "custodial atmosphere” in the absence of Miranda warnings.
The court finds such procedure to be impermissible under constitutional standards (see, People v Jones, 47 NY2d 528).
Accordingly, the motion to suppress the defendant’s statement is in all respects granted.