[No. 53625-2. En Banc. November 12, 1987.]

THE STATE OF WASHINGTON, *Petitioner*, v. LYNDA THETFORD, *Respondent.*

*John F. Raymond, Prosecuting Attorney,* and *Steven L. Olsen, Deputy,* for petitioner.

*Michael H. Rosen,* for respondent.

*Kenneth O. Eikenberry, Attorney General,* and *John R. Wasberg, Assistant,* amici curiae.

PEARSON, C.J.—The issue presented is whether a known informant's involvement with and control by police can be so great that he or she no longer qualifies as a private individual, but is a de facto police officer for purposes of challenging the veracity of statements in a search warrant affidavit. We hold that under the facts in this case, the informant in question was an agent of the police. Accordingly, we affirm the trial court decision and order to produce the agent for respondent's upcoming suppression hearing.

Sergeant Robert Boice of the Port Townsend police department wrote an affidavit for a warrant to search the home of Lynda Thetford for items associated with the sale of cocaine. Sergeant Boice stated that in February 1986 he

contacted the Portland police department for help in locating a "professional agent to assist in drug investigations." On the recommendation of a Portland detective, Sergeant Boice met with "Agent", who "agreed to move to Port Townsend and assist the Port Townsend Police Department in Drug Investigations." The police department agreed to "pay the Agent's living expenses while he stayed in Port Townsend—as he would have to quit his job to move here." The department also agreed to pay the agent "an additional, unspecified amount when the investigations were completed", if he provided reliable information resulting in arrests and seizure of evidence.

Sergeant Boice went on in the affidavit to describe the information "Agent" had provided regarding Ms. Thetford's activities. "Agent" reported Ms. Thetford sold cocaine to him and to several other people from a supply in her house.

The police obtained a warrant to search Ms. Thetford's house on the basis of Sergeant Boice's affidavit. The return on the warrant and the State crime lab report indicate the officers found about 28 grams of cocaine in her house. Respondent Thetford was charged with possession of cocaine with intent to deliver and keeping a dwelling resorted to by persons for the unlawful use of controlled substances.

Respondent moved to suppress the evidence seized from her home as the product of an illegal search and moved to dismiss or suppress for police misconduct. She further moved to compel the prosecutor to produce the individual described as "Agent" in Sergeant Boice's affidavit for her CrR 3.6 suppression hearing. In the alternative, respondent sought an in camera interrogation of "Agent" prior to hearing on her motions. Respondent alleged that the search warrant had been obtained on the basis of deliberate or reckless misrepresentations. In her supporting affidavits, respondent named one Ron Baker as the person she suspected to be "Agent". Ms. Thetford admitted using cocaine with Ron Baker, but denied giving or selling it to him or to

anyone else in his presence.

The trial court examined the affidavits submitted by the parties, heard oral argument from counsel on the matter, and found as a fact that "Agent" held himself out as Ron Baker to respondent and others. The court held that the informer's privilege does not apply to "Agent" because he "was a paid State agent *directed and encouraged by the State.*" (Italics ours.) The court rejected the State's argument that "Agent" was immunized from production as a witness under the informer privilege. In its memorandum opinion, the trial court noted:

> [T]he State argues at some length that neither of two exceptions to the informant's privilege apply in this case. That, however, is not the issue . . . The issue is whether or not there *is* an informant's privilege. If there is, the defendant has made no showing that either of the exceptions apply. If there is not a privilege then we need not concern ourselves with the exceptions.

Citing the related cases of *State v. Wolken,* 103 Wn.2d 823, 700 P.2d 319 (1985) and *State v. Mannhalt,* 33 Wn. App. 696, 658 P.2d 15, *review denied,* 100 Wn.2d 1024 (1983), the trial court reasoned that the alleged informant's involvement with or control by the police was so great that he constituted a de facto police officer. *See generally United States v. Gagnon,* 635 F.2d 766, 769 (10th Cir. 1980) (de facto police agents are cloaked with state authority and therefore subject to Fourth Amendment restraints); *State v. Boynton,* 58 Hawaii 530, 574 P.2d 1330 (1978). The court therefore ordered the prosecutor to produce "Agent" at respondent's suppression hearing. The State moved for discretionary review of that order, and of the trial court's finding of fact. The Court of Appeals certified the motion to this court. The issue of whether the evidence should be suppressed is yet to be decided by the trial court.

The "informer's privilege", as it is usually called, is actually the State's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to law enforcement officers. *Roviaro v. United States,*

353 U.S. 53, 59, 1 L. Ed. 2d 639, 77 S. Ct. 623 (1957); *State v. Casal,* 103 Wn.2d 812, 699 P.2d 1234 (1985). The privilege is codified in Washington by statute, RCW 5.60.060(5), and by court rule. CrR 4.7(f)(2) provides that "[d]isclosure of an informant's identity shall not be required where the informant's identity is a prosecution secret and a failure to disclose will not infringe upon the constitutional rights of the defendant."

The privilege is not absolute, however. The court must balance the public interest in the free flow of information for law enforcement purposes against the accused's right to prepare his or her defense. *Roviaro,* at 62. If disclosure of an informer's identity "is relevant and helpful to the defense . . . or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure". (Footnote omitted.) *Roviaro,* at 60–61. Failure to compel disclosure under these circumstances will deprive defendant of a fair trial. *State v. Harris,* 91 Wn.2d 145, 149, 588 P.2d 720 (1978).

I

 The State challenges the trial court's finding of fact that "Agent" held himself out to respondent and to others as "Ron Baker". Normally, a trial court's findings of fact will be upheld on appeal so long as they are supported by substantial evidence. *Nichols Hills Bank v. McCool,* 104 Wn.2d 78, 82, 701 P.2d 1114 (1985). Substantial evidence is evidence in sufficient quantum to persuade a fair–minded person of the truth of the stated premise. *Ridgeview Properties v. Starbuck,* 96 Wn.2d 716, 719, 638 P.2d 1231 (1982). This court is freer to review factual findings based *solely* on documentary evidence, as the trial court was in no better position than the appellate court to make observations of demeanor. *Federal Way Family Physicians, Inc. v. Tacoma Stands Up for Life,* 106 Wn.2d 261, 266, 721 P.2d 946 (1986); *Davis v. Department of Labor & Indus.,* 94 Wn.2d 119, 124, 615 P.2d 1279 (1980). The trial court's finding that "Agent" held himself out to defendant and to

others as Ron Baker was based on a consideration of five affidavits and the arguments and memoranda of law of counsel. Sergeant Boice stated in his affidavit that "Agent" was brought from outside of Port Townsend and hired to conduct drug investigations, that he began his work in March 1986 and continued into April. During that time he stayed at respondent's home at least once. The defense affidavits establish the time of Baker's arrival in Port Townsend in early March. They also show that during the same time period many people in Port Townsend were approached for drugs by a new arrival in town who introduced himself as Ron Baker. This individual left the area as soon as arrests were made at the close of the department's investigation. Another affidavit showed that soon after "Agent" arrived in town, Ron Baker bought a car and made a call to Ellensburg to a telephone listed in Ron Baker's name.

Although the State characterizes the information in one of the defense affidavits as hearsay, there is no indication anywhere in the record of a contemporaneous objection to that effect. Failure to raise such an objection before the trial court precludes the State from urging its objection for the first time on appeal. *Bellevue Sch. Dist. 405 v. Lee,* 70 Wn.2d 947, 425 P.2d 902 (1967). Considering the evidence and argument presented to the trial judge as a whole, we find that the record amply supports the trial court's logical deduction that "Agent" held himself out to Ms. Thetford and to others as Ron Baker.

■ The *Roviaro* Court noted that "[t]he scope of the privilege is limited by its underlying purpose. Thus . . . once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable." *Roviaro v. United States, supra* at 60. "Agent's" identity is no longer a prosecution secret under CrR 4.7(f)(2) and RCW 5.60.060(5). Whether "Ron Baker" is "Agent's" real name or an alias is irrelevant for these purposes. The pertinent consideration is whether respondent has correctly identified the individ-

ual she dealt with as the agent of the police referred to in their affidavit. The informer's privilege is no longer at issue because "Agent's" identity is no longer a secret.[1]

## II

Under *Franks v. Delaware,* 438 U.S. 154, 155–56, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978),

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

The holding in *Franks* pertains to situations where the affiant police officer has made intentional or reckless misstatements, for the import of the case is to insure against Fourth Amendment violations by the State, rather than the misconduct of private persons. *Burdeau v. McDowell,* 256 U.S. 465, 65 L. Ed. 1048, 41 S. Ct. 574 (1921); 2 W. LaFave, *Search and Seizure* § 4.4(b) (1987). Where a nongovernment informant, for example, lies to a police officer who neither knows nor reasonably should have known of the falsehood, *Franks* does not apply. *Theodor v. Superior Court,* 8 Cal. 3d 77, 501 P.2d 234, 104 Cal. Rptr. 226 (1972). The *Franks* Court noted, however, that in an earlier case the Supreme Court "took as its premise that police could not insulate one officer's deliberate misstatement merely by

---

[1]We emphasize that our holding today, and that of the trial judge, do not support the proposition that any *paid* informant is not entitled to protection under the informant's privilege. The dire consequences warned of by the State and amicus will not be generated by our decision.

relaying it through an officer–affiant personally ignorant of its falsity." *Franks*, at 163 n.6 (citing *Rugendorf v. United States*, 376 U.S. 528, 11 L. Ed. 2d 887, 84 S. Ct. 825 (1964)).

Since respondent does not even allege that the affiant officer misstated "Agent's" information, she cannot argue that Sergeant Boice's statements must be excised under *Franks v. Delaware, supra*. Rather, respondent's contention is that, in light of "Agent's" degree of involvement in the case, he is a de facto police officer, and his *own* deliberate or reckless misstatements to Sergeant Boice should be excised from the officer's search warrant affidavit. In *United States v. Pritchard*, 745 F.2d 1112, 1118 (7th Cir. 1984) the court said, "while allegations that an *informant,* whose story was recited by an affiant, was lying are insufficient to require a *Franks* hearing, this principle does not apply when one *government agent* deliberately or recklessly misrepresents information to a second agent, who then innocently includes the misrepresentations in an affidavit."

In specifying the objects of a *Franks* veracity challenge, the United States Supreme Court stated: "The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant [officer], not of any *nongovernmental* informant." (Italics ours.) *Franks*, 438 U.S. at 171. *Franks* arises in the context of determining the extent of government misconduct that will invalidate a warrant under the Fourth Amendment.

The Washington cases that have examined this language from *Franks* have turned to Fourth Amendment "private search" cases for guidance in determining who is a "nongovernmental" informant. "Private search" issues deal with the question of whether individuals who conducted warrantless searches were de facto government agents by virtue of their involvement with or control by government officers. 1 W. LaFave § 1.8(a), (b). The courts' holdings in *State v. Wolken*, 103 Wn.2d 823, 700 P.2d 319 (1985), *State v. Mannhalt*, 33 Wn. App. 696, 658 P.2d 15, *review denied,* 100 Wn.2d 1024 (1983), and the other cases relied upon by

the trial court and defendant turn on whether an informant was a government agent in the search warrant context. Both of those cases held that the wrongful actions of a private party will be imputed to the State only if "the latter in some way instigated, encouraged, counseled, directed, or controlled the conduct in question." *Mannhalt,* at 702.

The State and amicus argue that the trial court based its decision on the fact that "Agent" was a paid informer, and that the mere fact of payment does not convert the informer's activities into governmental action. However, the trial court and defendant did *not* distinguish between informants on the basis of simply whether they were paid or unpaid. Instead, the court considered the nature of "Agent's" overall involvement with the police and concluded that the police control and direction over his actions were so extensive that "Agent" was a de facto government agent for Fourth Amendment purposes. The trial court distinguished between a nongovernmental informant and a government agent for purposes of the Fourth Amendment's prohibition against (and deterrent effect upon) *government* misconduct.

Federal cases support the proposition that payment of an informer's fee alone does not show that the informer's actions could be deemed those of the State. *See, e.g., United States v. Snowadzki,* 723 F.2d 1427 (9th Cir. 1984); *see also United States v. Lambert,* 771 F.2d 83 (6th Cir. 1985). Rather, the crucial question for the federal courts is "whether the government knew of and acquiesced in the intrusive conduct". *Snowadzki,* at 1429 (quoting *United States v. Miller,* 688 F.2d 652, 657 (9th Cir. 1982)). The United States Supreme Court noted in *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971) that whether a private citizen has acted as an agent of the police in conducting a search is determined by a consideration of all the circumstances of the case. When a private party undertakes a search at the instigation of government agents, or with their participation, or even under their observation, and the sole purpose of the search is to

detect contraband, the federal courts have concluded that the totality of the circumstances indicates that a government search has taken place, and the full panoply of constitutional provisions and curative measures applies. *United States v. Newton*, 510 F.2d 1149, 1153–54 (7th Cir. 1975); *Corngold v. United States*, 367 F.2d 1, 5 (9th Cir. 1966); *United States v. Haes*, 551 F.2d 767 (8th Cir. 1977). The Supreme Court said in *Byars v. United States*, 273 U.S. 28, 33–34, 71 L. Ed. 520, 47 S. Ct. 248 (1927):

> The Fourth Amendment was adopted in view of long misuse of power in the matter of searches and seizures both in England and the colonies; and the assurance against any revival of it, so carefully embodied in the fundamental law, is not to be impaired by judicial sanction of equivocal methods, which, regarded superficially, may seem to escape the challenge of illegality but which, in reality, strike at the substance of the constitutional right.

The state courts have taken a similar approach in cases where a private citizen acts as an agent of the police, examining the entire circumstances of a case to determine whether the actions of a private citizen were so involved with or controlled by the government as to constitute state action. The Alabama Supreme Court found state action where a shipyard foreman accompanied sheriff's department officers (at their request) on a warrantless search of a boat and discovered marijuana. The court held, "[u]nder these circumstances, we can conclude only that [the officers] were attempting to accomplish indirectly . . . that which they could not do directly themselves." *Nicaud v. State ex rel. Hendrix*, 401 So. 2d 43, 48 (Ala. 1981).

The Pennsylvania Supreme Court cited the plurality opinion of Justice Frankfurter in *Lustig v. United States*, 338 U.S. 74, 79, 93 L. Ed. 1819, 69 S. Ct. 1372 (1949) where he wrote, "[t]he decisive factor . . . is the actuality of a share by a federal official in the total enterprise of securing and selecting evidence by other than sanctioned means." The Pennsylvania court held that the State's receipt of wrongly obtained evidence, where the State had prior

knowledge of and concurrence in the wrongdoing, constituted ratification of the wrongful behavior, and the evidence must be suppressed under the Fourth Amendment. *Commonwealth v. Borecky*, 277 Pa. Super. 244, 419 A.2d 753 (1980). *See also State v. Anonymous*, 34 Conn. Supp. 104, 379 A.2d 946 (1977–78); *People v. Jackson*, 14 Cal. App. 3d 57, 65, 92 Cal. Rptr. 91 (1970); *State v. Boynton*, 58 Hawaii 530, 538, 574 P.2d 1330 (1978) (informant was actively recruited by police for the sole purpose of investigating defendant for contraband); *People v. Esposito*, 37 N.Y.2d 156, 160, 332 N.E.2d 863, 371 N.Y.S.2d 681 (1975).

In the case at bench, the trial judge's memorandum opinion shows that he considered the entire circumstances of "Agent's" involvement with the Port Townsend police and not the mere fact of payment. According to Sergeant Boice's affidavit, "Agent" was expressly recruited and hired to assist the police in drug investigations as a professional agent, and was put to work on respondent's case in particular. He had to leave employment elsewhere in order to do so. Sergeant Boice closely supervised "Agent's" actions and provided him the money to buy drugs. Under the terms of his contract with the Port Townsend police, "Agent" was to be paid for his expenses and was to receive a bonus or contingent fee if his services proved helpful. The trial judge applied the correct test for determining whether "Agent" acted as a police agent, and we agree with his conclusion.

Although *Franks* requires a substantial showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit before a defendant is entitled to an evidentiary hearing, *Franks* also holds that the showing need only be preliminary. Thus, defendants are not required to prove their charges by a preponderance of the evidence before being entitled to a *Franks* hearing. It is only at the hearing itself that defendants, aided by testimony and cross examination, must prove their charges by a preponderance of the evidence. *See Franks v. Delaware*, 438 U.S. 154, 156, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978);

*see generally United States v. Chesher,* 678 F.2d 1353, 1362 (9th Cir. 1982) ("clear proof" is not required to be shown before a defendant is entitled to an evidentiary hearing).

> There is . . . a presumption of validity with respect to the affidavit supporting the search warrant. . . . [T]he challenger's attack must be more than conclusory and . . . [t]here must be allegations of deliberate falsehood or of reckless disregard for the truth . . .

*Franks,* 438 U.S. at 171.

In the instant case, respondent has specified the portions of the affidavit she alleges are false. We agree with the trial court that her challenge was sufficiently definite and non-speculative to enable the court to conclude that issues of fact exist regarding the validity of the warrant.

The Illinois Court of Appeals has held that a defendant's affidavit, claiming that all the statements made by the government affiant in a search warrant affidavit were false, constituted a substantial preliminary showing entitling the defendant to a *Franks* hearing. The court said:

> In the present case, we do not believe defendant's affidavit should be considered unworthy of belief merely because he has an interest in the case, anymore [*sic*] so than the police officer's affidavit should be considered unworthy of belief because he has an interest in the case by being a representative of government and associated with the prosecution.

*People v. Garcia,* 109 Ill. App. 3d 142, 145–46, 440 N.E.2d 269 (1982), *cert. denied,* 460 U.S. 1040 (1983).

Both the State and amici argue forcefully that overwhelming policy considerations favor the use of informants in cases such as this, and their arguments are not subject to controversy. In this case, however, the court's ruling maintained the traditional test for determining who is a government agent. Those informers who are not government agents will retain the protection of the informer privilege that they always did. The option of an in camera hearing by the judge in the absence of defense counsel and defendant favored in *State v. Casal, supra,* and *State v. Harris,*

*supra,* remain available in the event the facts do not clearly demonstrate whether an informer's involvement with the police amounts to State action and the judge requires more information to make his or her determination. CrR 4.7(h)(6).

The United States Supreme Court has continually emphasized the importance of the constitutional requirement that a warrant cannot be obtained through governmental misrepresentation. *Franks,* 438 U.S. at 165. Even cases expanding the police power and diminishing the coverage of the exclusionary rule have taken care to state that the *Franks* rule remains intact. *United States v. Leon,* 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984); 2 W. LaFave § 4.4(a). Here, the trial court reasoned that the police should *not be permitted to circumvent the constitution by hiring an agent on a contract basis* and referring to him as an "informant".

Finally, the State argues that even if it is required to disclose "Agent's" identity and last known address, it "should not be required to run errands for the defense", citing *United States v. Turbide,* 558 F.2d 1053, 1060 (2d Cir. 1977) and *Eleazer v. Superior Court,* 1 Cal. 3d 847, 853, 464 P.2d 42, 83 Cal. Rptr. 586 (1970), for the proposition that a defendant who knows the identity of an informer must show that he has made a diligent attempt to locate the informer before a request should be granted for State assistance in securing the informer's presence.

Respondent points out that the State's contentions on this issue are at odds with the State's emphasis on the important policies (such as the prevention of retaliation and the protection of ongoing investigations) favoring the protection of informants' whereabouts. Respondent notes that the remedy provided by the trial court in ordering the State to produce "Agent" at her suppression hearing maintains the secrecy of "Agent's" current whereabouts. In *State v. Joseph,* 21 Wn. App. 510, 513, 586 P.2d 1177 (1978), the State's informer was found to be a material witness under *Roviaro,* and the court ordered the State to dis-

close her identity. The Court of Appeals was faced with an appeal from the denial of defendant's motion to have the State either produce the informer or disclose her whereabouts. Despite the contention that the informer was in great fear of the accused, the Court of Appeals directed the trial court to order the State to either produce the informer or disclose her whereabouts. The Court of Appeals said:

> If [the informer and defendant knew each other], the appearance of the informer could not increase her presumed peril so long as her whereabouts were kept confidential.

*State v. Joseph,* at 513.

The cases cited by the State are somewhat equivocal on the State's obligation to produce an informant. The *Turbide* court held that, where an informant would be a material witness on the issue of guilt or innocence, *Roviaro* compels the State to help the defense to locate the informant. The *Eleazer* court, too, required the prosecution to assist the defense in locating the informant. The determination appears to be made on a case–by–case basis, taking into account the relative needs of the parties. In the instant case, respondent has made a plausible argument that her interest and those of the State will be most fully protected by upholding the trial court's order to the State to produce "Agent" at the upcoming suppression hearing. The findings and order of the trial court are affirmed, and we remand the case for further proceedings.

UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.