OPINION OF THE COURT
Walter W. Dunbar, J.
The defendant moves to dismiss the informations charging the defendant with driving while intoxicated and operating an unregistered motor vehicle on the grounds of legal insufficiency, being the product of an illegal search and seizure, and in the interest of justice.
A hearing was held on October 26, 1981. The following facts were adduced at the hearing:
FACTS
On July 11, 1981 at about 1:40 a.m., New York State Park Police Officer Henry Yaekel observed the defendant’s vehicle in a gravel pull-off area next to the Whites Hollow Road. The defendant was stopped and facing westerly. Officer Yaekel was traveling easterly on regular road patrol with a police car equipped with red lights. As the officer turned into the gravel pull-off area and approached the defendant’s vehicle from the rear the defendant began to move his vehicle. Officer Yaekel turned on his red lights and signaled with his horn whereupon the defendant *768 stopped his vehicle. Officer Yaekel approached the defendant on foot, asked the defendant why he was there, observed alcohol on the defendant’s breath and a can half-hidden in the vehicle. Officer Yaekel then arrested the defendant for driving while intoxicated.
The situs of the arrest is a gravel pull-off area in the Watkins Glen State Park readily accessible to motor vehicles using the Whites Hollow Road, a paved public thoroughfare that goes through the park. The park is a public place owned and operated by the State of New York. It is maintained and regulated by the Office of Parks and Recreation of the State of New York. Officer Yaekel’s duties as a park police officer include patrolling the park and enforcing the rules and regulations of the department, one of which is to see that persons using the park after. 10:00 p.m. have paid the requisite fee and obtained the required permit to be in the park after that hour and he routinely checks those persons he finds in the park.
CONCLUSIONS OF LAW AND DETERMINATION
The defendant raises two questions:
(1) Is the gravel area a highway within the meaning of the Vehicle and Traffic Law?
(2) Whether the area is a highway or not, did the arresting officer have probable cause to stop the car in the first place?
The People concede that subdivision (a) of section 1100 of the Vehicle and Traffic Law applies to section 1192 thereof (driving while intoxicated). To be guilty of driving while intoxicated a motorist must be driving on a'“public highway” as that term is defined in section 134 of the Vehicle and Traffic Law.
The defendant urges the court to find that once the park is “closed” at 10:00 p.m. the public no longer has a general right of passage, a necessary element of the definition of “public highway”.
“Section 134 of the Vehicle and Traffic Law defines a public highway as £[a]ny highway, road, street, avenue, alley, public place, public driveway or any other public way.’ *** The language of the statute indicates that for *769 something to be a public highway * * *; that is, it must be a way ‘over which the public have a general right of passage’”. (People v Thew, 44 NY2d 681, 682; see, also, People v Conzo, 100 Misc 2d 143; State Farm Mut. Auto. Ins. Co. v Mavroidakos, 63 AD2d 933; Craig v Melton, 89 Misc 2d 449; Beck v Coby, 52 AD2d 559.)
In all of the five cases cited by the defendant a parking lot is involved, with four of the five being private parking lots. (Beck v Coby, supra, does not spell out if the lot was public or private.)
In People v Thew (supra), the Court of Appeals has said that a privately owned parking lot is not a “public highway”. The Watkins Glen State Park is not privately owned. All of the several parking lots in the park are public ways over which the public have a general right of passage. So also are all of the roads, paths, trails or other areas in the park where a motor vehicle may be used. Therefore, any motorist that operates a motor vehicle in the Watkins Glen State Park in violation of section 1192 of the Vehicle and Traffic Law is subject to arrest for driving while intoxicated.
The defendant contends that once the park is “closed” the public has no general right of passage. I disagree. Granted, not all of the public are allowed passage but that segment that wish to pay a fee and obtain a permit are free to operate a motor vehicle in the park. Analogously, by paying a fee a motorist may use the New York State Thruway. Without paying such fee the general public, in toto, does not have the right of passage. Are we to believe that the Vehicle and Traffic Law cannot be enforced on the Thruway because it is not open to the public without paying a fee? Not so.
I find the situs of the arrest to be a public highway within the meaning of the Vehicle and Traffic Law.
Did the arresting officer have probable cause to stop the car?
An exception to the requirement that Fourth Amendment seizures of persons must be based on probable cause was recognized in Terry v Ohio (392 US 1). “It should be emphasized that the factual basis required to support a *770 stop for a ‘routine traffic check’ is minimal. An actual violation of the Vehicle and Traffic Law need not be detectable. *** All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity. It is enough if the stop is based upon ‘specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion’ (Terry v Ohio, 392 US 1, 21, supra).” (People v Ingle, 36 NY2d 413, 420.)
In United States v Brignoni-Ponce (422 US 873) roving border patrols were stopping automobiles and checking for illegal immigrants and without probable cause. The investigative stops usually consumed less than a minute and involved “a brief question or two.” “Because of the limited nature of the intrusion, stops of this sort may be justified on facts that do not amount to the probable cause required for an arrest.” (United States v Brignoni-Ponce, supra, p 880.)
In People v Ingle (36 NY2d 413, 415) in clarification of its principal holding it is stated: “it should be emphasized that, in the context of a motor vehicle inspection ‘stop’, the degree of suspicion required to justify the stop is minimal. Nothing like probable cause as that term is used in the criminal law is required.”
Officer Yaekel admittedly did not have reasonable cause to believe that the defendant was committing a crime or that criminal activity was afoot. He further did not suspect that the defendant was violating the Vehicle and Traffic Law. In his role as an on-duty park officer he was curious to see what reason the defendant had for being where he was. This was not idle curiosity. Neither was it arbitrary and capricious as to the defendant as he routinely checks all vehicles under the same circumstances. Nor was it a whim. More stringent investigatory measures have been the practice of the park police, especially after a suicide victim was discovered in the recent past, in a vehicle, parked and not investigated for two days in the same general area where the defendant herein was observed parked.
The routine that Officer Yaekel practices falls well within the guidelines of Terry v Ohio (supra), United States *771 v Brignoni-Ponce (supra) and People v Ingle (supra) and the balancing test set forth in Terry v Ohio has been met in the instant case.
I find that Officer Yaekel had the right to approach and inquire of the defendant.
The motion to dismiss is denied in all respects.