■ JOSE PADILLA, Appellant, v FRANCES SCHERVIER HOUSING DEVELOPMENT FUND CORPORATION, Doing Business as FRANCES SCHERVIER HOME AND HOSPITAL, Defendant and Third-Party Plaintiff-Respondent. HUMPHREYS & HARDING, INC., Third-Party Defendant-Respondent. [758 NYS2d 3] —Order, Supreme Court, Bronx County (Howard Silver, J.), entered on or about September 24, 2001, which, to the extent appealed from as limited by the briefs, granted third-party defendant Humphreys & Harding, Inc.'s motion and defendant and third-party plaintiff Frances Schervier Housing Development Fund Corporation, doing business as Frances Schervier Home and Hospital's cross motion to dismiss plaintiff's complaint pursuant to CPLR 3211, unanimously reversed, on the law, without costs, the respective motion and cross motion denied and plaintiff's claim pursuant to Labor Law § 241 (6) reinstated.

Defendant and third-party plaintiff Frances Schervier Housing Development Fund Corporation (hereinafter defendant

owner) owns a parcel of property at 2975 Independence Avenue in the Bronx (hereinafter the premises). In 1997, defendant owner entered into a contract with third-party defendant Humphreys & Harding, Inc. (hereinafter Humphreys & Harding) to renovate and expand its nursing home facility located on the premises (hereinafter the project). Defendant owner hired Humphreys & Harding to act as its construction manager, and plaintiff was employed as a laborer by Humphreys & Harding.

On June 26, 1998, plaintiff was working on the project. Specifically, plaintiff was situated inside a concrete utility excavation vault about 10 feet below grade level. At the bottom of the vault there was an opening in its floor approximately 3 feet by 5 feet. A concrete sump housing was to be inserted into the opening. This concrete sump housing would eventually hold a sump pump and its casing. Plaintiff's job that day was to guide the concrete sump housing, which a backhoe was lowering into the 3 by 5 opening located at the vault's bottom. The concrete sump housing was fastened to the backhoe by a cable. The cable was looped around the concrete housing "like a sling." Plaintiff's expert averred that the proper way to secure the concrete housing to the cable was to use a "clip" and a "choke," neither of which was used here.

After two attempts, the operator of the backhoe was unable to lower the concrete housing in such a way that plaintiff could guide it into the opening. Giving up, the operator lowered the concrete housing and set it down, partially over the opening and partially resting on the floor of the vault. The operator then exited the cab of the backhoe and instructed plaintiff to remove the cable. Plaintiff straddled the concrete housing and removed the cable from the backhoe. As he removed the cable, the concrete housing "slipped" and pinched his foot between the housing and the edge of the opening, amputating two toes.

Plaintiff commenced this action against defendant owner alleging violations of, inter alia, Labor Law § 241 (6). Specifically, as relevant to this appeal, plaintiff claimed that defendant owner violated certain provisions of Industrial Code part 23 (12 NYCRR part 23). Thereafter, defendant owner commenced a third-party action against Humphreys & Harding for contractual and common-law indemnification. After joinder of issue, Humphreys & Harding moved to dismiss the plaintiff's complaint pursuant to CPLR 3211 and for an extension of time to move for summary judgment in the event the motion was denied. The owner cross-moved for, inter alia, the same relief.

The motion court, inter alia, dismissed plaintiff's complaint

pursuant to CPLR 3211. As relevant to this appeal, the court held that "plaintiff has failed to establish that any section of the Industrial Code [was] violated * * * ." Although defendant and third-party defendant moved to dismiss the complaint pursuant to CPLR 3211, all the parties relied on evidentiary material in support of and in opposition to the motion and cross motion. In addition, despite the court's express dismissal on CPLR 3211 grounds, the court specifically stated that it had considered the "admissible evidence" before rendering its decision. Thus, it appears that all the parties and the court treated the motion and cross motion as requests for summary judgment. In any event, under these particular circumstances, the difference is inconsequential for purposes of appellate review as plaintiff has sufficiently stated a cause of action under Labor Law § 241 (6) and raised triable issues of fact about whether there were violations of Industrial Code part 23.

Labor Law § 241 (6) imposes a nondelegable duty on owners and contractors to provide reasonable and adequate protection and safety for workers without regard to direction and control. It is well settled that in order to prevail under this section of the Labor Law, a plaintiff must establish that certain "concrete specifications" of the Industrial Code were violated as opposed to a general reiteration of common-law principles (*see Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 505 [1993]). Moreover, a plaintiff must demonstrate that the violation was a proximate cause of the injury (*see Brown v New York City Economic Dev. Corp.*, 234 AD2d 33 [1996]).

On appeal, plaintiff argues that defendant owner violated three specific provisions of the Industrial Code, i.e., 12 NYCRR 23-9.2 (g); 23-9.4 (e) (1) and (2); and 23-9.2 (b) (2).[1] As a threshold matter, we find, as the motion court implicitly found, that plaintiff sufficiently set forth provisions of the Industrial Code which mandate compliance with "concrete specifications"[2] (*see Ross*, 81 NY2d at 505; *see also Parrelli v City of New York*,

---

1. Although defendant owner mentions on appeal that these specific violations were only first raised by plaintiff in his opposition papers to the cross motion to dismiss, which was made after plaintiff filed a note of issue, it does not argue that the motion court erred in considering plaintiff's substantive argument. In any event, we have held that a plaintiff's failure to identify the specific code provisions in a complaint or bill of particulars is not necessarily fatal to a section 241 (6) claim in the absence of unfair surprise or prejudice (*see Adams v Santa Fe Constr. Corp.*, 288 AD2d 11 [2001]; *Noetzell v Park Ave. Hall Hous. Dev. Fund Corp.*, 271 AD2d 231 [2000]).

2. Section 23-9.2 (g) provides that "[t]he operators of material handling equipment shall not leave such equipment while loads, buckets or blades are

277 AD2d 167 [2000] [section 23-9.4 (e) sets forth sufficiently specific requirements governing the movement of materials with a backhoe to constitute a standard for the imposition of statutory liability]). On appeal, defendant owner only challenges section 23-9.2 (g) as not being sufficiently specific to support a claim based on a section 241 (6) violation. Defendant owner's reliance on *Ross* (supra) is misplaced. While section 23-9.2 (g) employs the term "equivalent" it does so to describe the location of the area where the load is to be brought to rest. This term is not used, as defendant owner maintains, to describe a "general safety standard." Moreover, this section, *as a whole*, "mandat[es] compliance with concrete specifications" (*Ross*, 81 NY2d at 505).

While we agree that these challenged sections are sufficiently specific to serve as a predicate for an action brought pursuant to Labor Law § 241 (6), we disagree with the motion court's conclusion that plaintiff failed to establish that any of these sections was in fact violated. Rather, we find that plaintiff raised triable issues of fact sufficient to defeat summary judgment.[3]

Section 23-9.2 (g) requires that any load being handled by power-operated equipment must be lowered to the ground, grade or an equivalent surface, or if the load cannot be lowered to the ground it should be brought to rest on blocks. Here, the concrete housing was placed in a precarious position, partially resting on the floor of the vault and partially hanging over the opening. Plaintiff has raised a triable issue of fact whether his injury was caused by the failure to comply with this section by placing the concrete housing to rest on an uneven surface.

Section 23-9.4 (e) (1) and (2) require that the cable be connected by either a closed shackle or a safety hook. Plaintiff's expert testified that the operator of the backhoe was unable to

---

suspended. Any such load, bucket or blade shall be brought to rest on blocks, shall be lowered to the ground, grade or equivalent surface or shall be brought to the lowest end of travel of the equipment."

Section 23-9.4 (e) (1) and (2) provide that "[a]ny load handled by such equipment shall be suspended from the bucket or bucket arm by means of wire rope having a safety factor of four [and s]uch wire rope shall be connected by means of either a closed shackle or a safety hook capable of holding at least four times the intended load."

Section 23-9.2 (b) (2) provides that "[o]perators of power-operated material handling equipment shall remain at the controls while any load is being handled."

3. Indeed, it is beyond cavil that the key to summary judgment is " 'issue-finding, rather than issue determination' " (*Sillman v 20th Century-Fox Film Corp.*, 3 NY2d 395, 404 [1957], quoting *Esteve v Abad*, 271 AD 725, 727 [1947]; *accord Epstein v Scally*, 99 AD2d 713, 714 [1984]).

get the concrete housing into the opening because the cable was "looped around the load which permitted it to shift." Thus, plaintiff raised a triable issue of fact whether his injury occurred because this section was not followed. Any issue regarding proximate cause "merely presents a question of fact for resolution at trial" (*Parrelli*, 277 AD2d at 167).

Finally, assuming the factfinder determines that the concrete housing was not properly put to rest, plaintiff raises the further issue whether the operator of the backhoe left the controls in violation of section 23-9.2 (b) (2), which requires that the operator shall remain at the controls while any load is being handled. Concur—Andrias, J.P., Saxe, Buckley, Rosenberger and Marlow, JJ.