OPINION OF THE COURT
Lucy Billings, J.
Plaintiff, an employee of defendant Kids Waterfront Corp., sues to recover for traumatic personal injuries, including bilateral amputation of his legs, from an excavator owned by defendant Sanzo Enterprises, Inc., and operated by Jose Ochoa, a co-employee of Kids Waterfront. Sanzo Enterprises has moved for summary judgment dismissing the complaint against this defendant (CPLR 3212 [b]). For the reasons explained below, the court grants Sanzo Enterprises’ motion to the extent set forth and otherwise denies the motion (CPLR 3212 [b], [e]).
I. Undisputed Background Facts
On November 8, 2002, Kids Waterfront operated a solid waste transfer station at 1264 Viele Avenue, Bronx County, which received and transferred demolition debris. On that date Kids Waterfront employed plaintiff as a yard worker who cleaned and organized the dumped demolition debris and the area where it was transferred, by manually sorting through large piles of dirt, rock, and garbage and removing the garbage, such as metal, wood, and plastic materials. Sanzo Enterprises operated as a carting company transporting demolition debris to Kids Waterfront’s transfer station where Sanzo Enterprises dumped the debris and where it was sorted and then transported to a landfill.
Plaintiff was injured at approximately 9:00 a.m. when he was standing on a pile of debris that Ochoa was sorting with the *247 excavator, and the grapple attached to the excavator grabbed and severed plaintiff’s legs. Sanzo Enterprises owned the excavator and its attachments. There was no visible, audible, or other warning on the excavator or its grapple as it approached plaintiff behind him.
II. Plaintiffs Claims against Sanzo Enterprises
Plaintiff claims three bases for defendant Sanzo Enterprises’ liability for his injuries. First, plaintiff claims the excavator was a motor vehicle under New York Vehicle and Traffic Law § 125, and, as the vehicle owner, Sanzo Enterprises is liable for Ochoa’s unsafe operation of the vehicle (Vehicle and Traffic Law § 388 [1]). Second, plaintiff claims that even if the excavator does not qualify as a vehicle under Vehicle and Traffic Law § 125, Sanzo Enterprises negligently entrusted this dangerous equipment to an untrained operator. Third, plaintiff claims Sanzo Enterprises, by authorizing and knowingly permitting the excavator’s use under the conditions Ochoa used the equipment at his and plaintiffs work site, violated New York Labor Law §§ 200 and 241 (6).
A. Negligent Operation of a Motor Vehicle
For defendant to defend successfully against its liability for Ochoa’s operation of a motor vehicle (Vehicle and Traffic Law § 388 [1]), defendant must establish conclusively that (1) it did not permit Ochoa to use the excavator; or (2) Ochoa did not operate it negligently or unsafely; or (3) the excavator was not a motor vehicle. Since defendant admits it permitted Ochoa to use the excavator and makes no attempt to show his use was not negligent or hazardous, defendant must rely on the third ground for a defense to plaintiffs claim of negligent operation.
1. Whether Defendant’s Excavator Was a Motor Vehicle
Vehicle and Traffic Law § 125 defines “motor vehicles” under the Vehicle and Traffic Law as: “Every vehicle operated or driven upon a public highway which is propelled by any power other than muscular power .... For the purposes of titles four and five the term motor vehicles shall exclude . . . self-propelled caterpillar or crawler-type equipment while being operated on the contract site.”
As Vehicle and Traffic Law § 388 is in title III of the Vehicle and Traffic Law, section 125’s exception for “caterpillar or crawler-type equipment” does not exclude this equipment from motor vehicles under section 388. Section 388 (2), however, *248 contains its own exceptions: “As used in this section, ‘vehicle’ means a ‘motor vehicle’, as defined in section [125] . . . For the purpose of this section, self-propelled caterpillar or crawler-type equipment while being operated on the contract site, shall not be defined as motor vehicles.”
Plaintiff does not dispute defendant’s evidence, through Ochoa’s deposition testimony, that defendant’s excavator was similar to caterpillar equipment. If so, that equipment’s exclusion from both sections 125 and 388 (2) only under specified circumstances and its inclusion within the broad definition of any “vehicle . . . propelled by any power other than muscular power” compel the conclusion that, if not within the exclusion and if operated on a “public highway,” caterpillar or similar equipment is a “motor vehicle” (Vehicle and Traffic Law § 125; Matter of Vincent H., 3 Misc 3d 900, 903 [Fam Ct, Queens County 2004]; see Harper v Lumbermen’s Mut. Cas. Co., 174 AD2d 1031, 1032 [4th Dept 1991]). The court need not definitively determine whether defendant’s excavator was “caterpillar or crawler-type equipment,” however, since defendant presents no evidence indicating Ochoa was operating the excavator on a “contract site” on November 8, 2002 (Vehicle and Traffic Law § 388 [2]).
The Vehicle and Traffic Law does not define “contract site,” although Vehicle and Traffic Law § 311 (2) and § 359 (k), like § 388 (2), both use the term to delineate the circumstances where caterpillar or similar equipment is excluded from “motor vehicles.” Neither those sections’ context nor their history, however, is instructive as to the meaning of “contract site.”
The only other Vehicle and Traffic Law provision that uses the term, section 401 (7) (K), uses the term to exclude that equipment from increased registration fees for heavy duty vehicles. Despite that different purpose, this section’s history proves more instructive.
Section 401 (7) derives from section 11 of the Vehicle and Traffic Law of 1929, which, as of 1956, included a subdivision (17) pertaining to the registration of “earth-moving” equipment operated on a public highway. Like the current section 401 (7) (K), subdivision (17) relaxed the registration requirements for that equipment when operated “for the purpose of construction or reconstruction of a public highway . . . pursuant to a contract with the state, a municipality or a public corporation” on the “contract site.”
While no evidence indicates Ochoa was operating defendant’s excavator on a contract site under any contract with a public *249 entity for construction or reconstruction of a public highway, to qualify as a motor vehicle under Vehicle and Traffic Law §§ 125 and 388 (1) he must have been operating the excavator on a “public highway.” Vehicle and Traffic Law § 134 does define that term, comprehensively, as any “highway, road, street, avenue, alley, public place, public driveway or any other public way.”
Both plaintiff and defendant present little evidence shedding light on whether Ochoa was operating defendant’s excavator within Vehicle and Traffic Law § 134’s broad ambit (see People v Thew, 44 NY2d 681, 682 [1978]; Matter of County of Westchester v Winstead, 231 AD2d 630 [2d Dept 1996]; People v Haszinger, 149 Misc 2d 856, 859 [Nassau Dist Ct 1991]; People v Kolinsky, 111 Misc 2d 633, 636 [Crim Ct, Queens County 1981]). The only fact, albeit undisputed, is that the excavator was in operation at a solid waste transfer facility. No evidence reveals whether the area around the piles of debris was paved, was adjacent to or accessible from a road, or was open to public passage (People v Thew, 44 NY2d at 682; People v Moore, 196 Misc 2d 340, 342 [Just Ct, Tompkins County 2003]; People v Haszinger, 149 Misc 2d 856, 858-859 [Nassau Dist Ct 1991]; People v Edsall, 111 Misc 2d 767, 769 [Town Ct, Schuyler County 1981]). The area need not be open to vehicular traffic to be a “public place” or “public way” (Vehicle and Traffic Law § 134; Matter of County of Westchester v Winstead, 231 AD2d at 630; Matter of Vincent H, 3 Misc 3d at 904).
Moreover, in determining whether an area qualifies as a “public place” or “public way,” a key criterion is whether the area is exclusively for the benefit of the private owner and its invitees, and the private owner alone regulates the area’s availability and operations (Vehicle and Traffic Law § 134; People v Moore, 196 Misc 2d at 342; People v Haszinger, 149 Misc 2d at 858; see People v Edsall, 111 Misc 2d at 768-769; People v Kolinsky, 111 Misc 2d at 636-637). If the State regulates the area or otherwise has a demonstrated interest in the area for purposes of public health or safety, or the public is permitted to use the area, even if restricted by a permit, fee, or other limitations, such circumstances confer a sufficient public “right of passage” to qualify the area as a public highway (People v Thew, 44 NY2d at 682; People v Haszinger, 149 Misc 2d at 858; People v Ostermeier, 118 Misc 2d 68, 71 [Suffolk County Ct 1983]; People v Edsall, 111 Misc 2d at 768-769; see People v Kolinsky, 111 Misc 2d at 636-637).
*250 New York’s solid waste transfer facilities bear indicia of a “public place” or “public way” (Vehicle and Traffic Law § 134; People v Moore, 196 Misc 2d at 342; People v Haszinger, 149 Misc 2d at 858; see People v Edsall, 111 Misc 2d at 768-769; People v Kolinsky, 111 Misc 2d at 636-637). Solid waste transfer stations may operate in this state only with a permit from the New York State Department of Environmental Conservation (DEC), consistent with Environmental Conservation Law § 27-0106’s objectives, and in full compliance with DEC rules (ECL 27-0101 [2]; 27-0707 [1], [2] [a], [c] [1]; [5]; 27-0703 [2]). DEC specifically must approve a transfer station’s acceptance of demolition debris (6 NYCRR 360-11.4 [a]). Where solid waste passes through the transfer station to be disposed of at another site, DEC or another governmental agency, if the other site is not in New York, also must authorize that site (6 NYCRR 360-11.4 [b]).
First, DEC rules repeatedly contemplate and regulate the safe, unobstructed, and efficient flow of vehicular traffic on on-site paved roadways in transfer stations and parking lots there, as well as entrances and exits from adjacent roadways (6 NYCRR 360-1.14 [j], [n]; 360-11.2 [a] [2] [i], [3] [iii], [vi]; 360-11.3 [a] [1], [7]; [b]; 360-11.4 [m] [4]; see People v Kolinsky, 111 Misc 2d at 636-637). Any malfunctioning equipment specifically must be remedied to ensure against hazards (6 NYCRR 360-1.14 [f] [3]).
The rules further regulate public health and safety. They control solid waste storage, removal, recycling, and salvaging; litter, dust, insects, odors, noise, and other vectors or nuisances; open burning and fires; exhaust, leakage, and other discharges; drainage; soil erosion; and ponding, other surface water, and groundwater within a transfer station and adjacent public and private water supplies (6 NYCRR 360-1.14 [b], [e] [3], [f| [1], [i] [4], (jMm], [p], [q], [v]; 360-11.2 [a] [2] [iv]; 360-11.3 [a] [2], [5], [6]; 360-11.4 [e]-[h], [k], [1], [n] [3]; see People v Haszinger, 149 Misc 2d at 858; People v Kolinsky, 111 Misc 2d at 636). Finally, the rules contemplate and regulate public access, by allowing public dumping, requiring notice of when and what solid waste is accepted, requiring separate access for passenger vehicles, and allowing but controlling roadways passing through a transfer station (6 NYCRR 360-1.14 [c], [d], [e] [1]; [n]; 360-11.3 [b] [2]; 360-11.4 [d]; see People v Edsall, 111 Misc 2d at 768-769).
Thus, the sole fact that Ochoa was operating defendant’s excavator in a solid waste transfer station indicates the excava *251 tor may have been in a public way or place. Given this undisputed fact, the absence of evidence that the excavator was on a governmental highway construction contract site, and the excavator’s undisputed qualification as a motor vehicle in all other respects, defendant has not met its burden to establish that the excavator was not a motor vehicle under Vehicle and Traffic Law §§ 125 and 388.
2. Defendant’s Liability for Ochoa’s Use of a Vehicle
Since Ochoa was plaintiffs coemployee of Kids Waterfront when plaintiff was injured in the course of both his and Ochoa’s employment, Workers’ Compensation Law § 29 (6) would bar any claim by plaintiff directly against Ochoa. While defendant Sanzo Enterprises was not plaintiff’s employer, the issue remains whether defendant may be vicariously hable for Ochoa’s negligence, for which plaintiff may not sue Ochoa directly (id.; Macchirole v Giamboi, 97 NY2d 147, 149-150 [2001]; Heritage v Van Patten, 59 NY2d 1017, 1019 [1983]; Raptis v Juda Constr., Ltd., 26 AD3d 153, 155 [1st Dept 2006]; Lotysz v Montgomery, 309 AD2d 628 [1st Dept 2003]; see Negron v Rodriguez & Rodriquez Stor. & Warehouse, Inc., 23 AD3d 159, 160 [1st Dept 2005]; Flood v Berk, 301 AD2d 361, 362 [1st Dept 2003]).
Had plaintiff claimed only defendant’s vicarious liability for Ochoa’s negligence, Workers’ Compensation Law § 29 (6) would bar plaintiffs claim (Tikhonova v Ford Motor Co., 4 NY3d 621, 624-625 [2005]; Chiriboga v Ebrahimoff, 281 AD2d 353, 354 [1st Dept 2001]; Rose v Gelco Corp., 261 AD2d 381, 382 [2d Dept 1999]; Trizzino v Mildank Taxi Corp., 128 AD2d 607, 608 [2d Dept 1987]). Here, however, plaintiff claims defendant’s affirmative negligence in permitting Ochoa to use the excavator without adequate training and safety precautions. Although plaintiff also claims defendant’s negligence in entrusting this dangerous equipment to an untrained operator, independent of plaintiffs reliance on Vehicle and Traffic Law §§ 125 and 388 (1), nothing bars a separate, similar claim under Vehicle and Traffic Law § 388 (1). If a vehicle owner’s “affirmative negligence,” rather than purely vicarious liability for the vehicle operator’s negligence, carries any meaning under section 388 (1), it is precisely that the owner knowingly permitted the operator’s use of the vehicle under circumstances that foresee-ably exposed persons to injury (Nunez v Jenkins, 8 AD3d 151 [1st Dept 2004]; Chiriboga v Ebrahimoff, 281 AD2d at 354; Rascoe v Riteway Rentals, 176 AD2d 552 [1st Dept 1991]; see Kobre v United Jewish Appeal-Fedn. of Jewish Philanthropies of N.Y., *252 288 AD2d 158, 158-159 [1st Dept 2001]; Christiansen v Silver Lake Contr. Corp., 188 AD2d 507, 508 [2d Dept 1992]; Carpenter v Miller, 132 AD2d 859, 860-861 [3d Dept 1987]).
Vehicle and Traffic Law § 388 (1) not only imposes liability on a vehicle owner for the operator’s negligence, but “also seeks to discourage owners from permitting people . . . who might engage in unreasonably dangerous activities to use their vehicles” (Argentina v Emery World Wide Delivery Corp., 93 NY2d 554, 562 [1999]), and to encourage owners instead to exercise a “heightened degree of care . . . when selecting and supervising drivers permitted to operate their vehicles” (Murdza v Zimmerman, 99 NY2d 375, 379 [2003]; see id. at 379 n 3; Fried v Seippel, 80 NY2d 32, 42 [1992]; Conte v Aprea, 23 AD3d 225, 227 [1st Dept 2005]). Until defendant establishes the absence of defendant’s own, direct negligence, or plaintiff fails to establish that independent negligence at trial, his claim under Vehicle and Traffic Law § 388 (1) is not barred by Workers’ Compensation Law § 29 (6) and must be sustained (Nunez v Jenkins, 8 AD3d at 151; Kobre v United Jewish Appeal-Fedn. of Jewish Philanthropies of N.Y., 288 AD2d at 158; Christiansen v Silver Lake Contr. Corp., 188 AD2d at 508; Carpenter v Miller, 132 AD2d at 861).
B. Negligent Entrustment
For defendant to defend successfully against plaintiffs claim of defendant’s negligence in entrusting the excavator to Ochoa, defendant must establish conclusively that (1) it did not place the excavator in Ochoa’s control; or (2) the excavator was not a dangerous piece of equipment; or (3) defendant had no reason to believe Ochoa would use the excavator negligently or dangerously. Defendant neither denies permitting Ochoa’s use of the excavator, nor attempts to show the excavator was reasonably safe even if misused, as plaintiffs injuries themselves belie such a position. Thus defendant relies exclusively on the third ground for a defense to plaintiffs negligent entrustment claim.
The owner of. dangerous equipment has the duty to entrust it to a person whose use will not create an unreasonable risk of harm to other persons (Hamilton v Beretta U.S.A. Corp., 96 NY2d 222, 236 [2001]; Myers v 149 Automotive, 295 AD2d 104, 105 [1st Dept 2002]; Guay v Winner, 189 AD2d 1081, 1083 [3d Dept 1993]; Splawnik v Di Caprio, 146 AD2d 333, 335-336 [3d Dept 1989]; see Barocas v F.W. Woolworth Co., 207 AD2d 145, 148 [1st Dept 1995]). Thus defendant must establish that it *253 lacked knowledge or reason to know that Ochoa’s use of the excavator was unreasonably hazardous (Hamilton v Beretta U.S.A. Corp., 96 NY2d at 237; Myers v 149 Automotive, 295 AD2d at 105; Splawnik v Di Caprio, 146 AD2d at 335), due to deficiencies either in his training, experience, or conduct or in the excavator’s operation (Rios v Smith, 95 NY2d 647, 653 [2001]; Troncoso v Home Depot, 258 AD2d 644, 645 [2d Dept 1999]; Guay v Winner, 189 AD2d at 1083; Zara v Perzan, 185 AD2d 236, 237 [2d Dept 1992]; see Barocas v F.W. Woolworth Co., 207 AD2d at 148).
Regarding Ochoa’s competence, defendant points to his testimony that before Ochoa was employed by defendant, he operated a caterpillar machine similar to defendant’s excavator; when he began his employment with Kids Waterfront, he was tested in his use of the excavator; and for over two years before plaintiffs injury, he operated defendant’s excavator full time. While this testimony may show Ochoa’s experience in operating the excavator, neither this nor any other evidence establishes that he was trained, knowledgeable, or experienced in the excavator’s safe operation or use. Even if the machine he operated before his employment with Eads Waterfront was identical to Sanzo Enterprises’ excavator, nothing demonstrates he knew how to operate the machine safely or in fact operated it safely. Nothing indicates who tested him in the excavator’s use or, most significantly, what the test results were. Similarly, just as he may have started out operating the excavator without the requisite knowledge or training, his two years of experience simply may have been in operating the excavator unknowledgeably, unsafely, and negligently, reinforcing unsafe and negligent habits.
Sanzo Enterprises does not dispute that Ochoa never operated any type of excavator before operating defendant’s excavator. Plaintiff, moreover, points to Ochoa’s further testimony that the prior machines Ochoa did operate were not heavy construction or demolition equipment, but consisted of a bulldozer, backhoe, and rubber loader. Although the testing administered to Ochoa is unspecified, it lasted less than an hour and did not include any written component. Ochoa was unable to read English and hence never read any manuals or warnings pertaining to the excavator, nor were any read to him. Carmine Sanzo, Sanzo Enterprises’ vice-president, further admitted that he never instructed Ochoa to read anything, nor read anything to him, pertaining to the excavator. Nor did defendant provide *254 Ochoa any training, whether through a seminar or video presentation, on the job, or otherwise.
Regarding the excavator’s operation, Ochoa explained that the grapple struck plaintiff because Ochoa was blinded by sun glare, as occurred during the early hours every morning when the excavator cab was facing toward the southeast. Ochoa previously had informed Carmine Sanzo that the sun glare obstructed Ochoa’s visibility as Ochoa operated the excavator. Defendant took no measures, however, either to remedy the sun glare with protective equipment or to control the hours or way Ochoa operated the excavator (Rios v Smith, 95 NY2d at 653).
In light of this evidence, plaintiff at minimum has raised issues whether defendant knowingly furnished the excavator to an operator who was inexperienced in its safe use and unable to understand all the dangers posed or the necessary safety precautions (Splawnik v Di Caprio, 146 AD2d at 336). In addition, when the operator brought a specific danger and need for protective measures to defendant’s attention, defendant could have foreseen clearly that his use of the excavator, particularly in the early mornings and on sunny days, was likely to be dangerous to other workers nearby. Yet defendant took no precaution (Rios v Smith, 95 NY2d at 653-654). Therefore plaintiffs negligent entrustment claim must proceed to trial as well.
C. Labor Law § 241 (6)
Labor Law § 241 requires that
“[a] 11 contractors and owners and their agents, . . . when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements: . . .
“6. All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein .... The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work . . . shall comply therewith.”
The duty to comply with the regulations under Labor Law § 241 (6) is nondelegable, subjecting both the owner of the premises and its agents to liability for a violation even if they exercised no supervision or control over the work site and had no notice *255 of work site conditions (Comes v New York State Elec. & Gas Corp., 82 NY2d 876, 878 [1993]; Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 502-503 [1993]). While a failure to take the safety measures required by this statute, proximately causing injury, does not impose absolute liability absent negligence, the statute imposes liability on the owner and its agents for injuries caused by another party’s negligence regardless of these defendants’ own negligence (Rizzuto v L.A. Wenger Contr. Co., 91 NY2d 343, 349-350 [1998]; Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d at 502 n 4).
Even upon defendant’s summary judgment motion, plaintiff, to support his Labor Law § 241 (6) claim, must articulate a New York State Department of Labor safety regulation affirmatively mandating specific, concrete conduct or conditions that apply to the work at plaintiffs work site and that defendant violated (Comes v New York State Elec. & Gas Corp., 82 NY2d at 878; Vaneer v 993 Intervale Ave. Hous. Dev. Fund Corp., 5 AD3d 161, 163 [1st Dept 2004]; Pesca v City of New York, 298 AD2d 292, 293 [1st Dept 2002]; Kerr v Louisville Hous., 2 AD3d 924, 926-927 [3d Dept 2003]; see Rizzuto v L.A. Wenger Contr. Co., 91 NY2d at 349; Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d at 504-505; Messina v City of New York, 300 AD2d 121, 122 [1st Dept 2002]; Fitzgerald v New York City School Constr. Auth., 18 AD3d 807, 808 [2d Dept 2005]). This burden falls on plaintiff because it is a pleading requirement, as well as a burden of proof (Walker v Metro-North Commuter R.R., 11 AD3d 339, 340 [1st Dept 2004]; Reilly v Newireen Assoc., 303 AD2d 214, 218 [1st Dept 2003]; Padilla v Frances Schervier Hous. Dev. Fund Corp., 303 AD2d 194, 196 n 1 [1st Dept 2003]; Pesca v City of New York, 298 AD2d at 293).
Only in response to interrogatories served by former defendant Formula Equipment, Inc., and submitted only in support of Formula Equipment’s separate, withdrawn motion for summary judgment, does plaintiff allege any regulations violated, and these allegations set forth only Formula Equipment’s violations. The regulations plaintiff cites, moreover, 12 NYCRR 23.1 and 23.9 “and all the sub-sections thereunder,” were not in effect in 2002 (aff of Craig A. Lamster, exhibit C, at 6). His reference to “sub-sections thereunder” assuredly compels the interpretation that 23.1 and 23.9 refer to sections under which any subsections would fall. Insofar as plaintiff may have intended to refer to 12 NYCRR subparts 23-1 and 23-9, however, such a blunderbuss citation to the over 100 sections and subsections in *256 those subparts hardly would satisfy the specificity requirement under Labor Law § 241 (6) Walker v Metro-North Commuter R.R., 11 AD3d at 340; Reilly v Newireen Assoc., 303 AD2d at 218; Padilla v Frances Schervier Hous. Dev. Fund Corp., 303 AD2d at 196 n 1; Pesca v City of New York, 298 AD2d at 293).
None of the “GENERAL PROVISIONS” in 12 NYCRR 23-1.1 through 23-1.34, comprising subpart 23-1, appears to apply to plaintiffs work site in any event. 12 NYCRR 23-9.2 (a), under subpart 23-9, requires adequate inspections, maintenance, and repair of power-operated equipment and the maintenance and repair by or under the supervision of designated persons. Section 23-9.2 (b) (1) similarly requires safe operation of the equipment by trained designated persons, but this provision is insufficiently specific or concrete to support a claim under Labor Law § 241 (6) (Thompson v Ludovico, 246 AD2d 642, 643 [2d Dept 1998]; Webber v City of Dunkirk, 226 AD2d 1050, 1051 [4th Dept 1996]). While the Fourth Department’s view of subsection (a) is diametrically opposed (Piccolo v St. John’s Home for Aging, 11 AD3d 884, 886 [4th Dept 2004]; Tillman v Triou’s Custom Homes, 253 AD2d 254, 258 [4th Dept 1999]; Webber v City of Dunkirk, 226 AD2d at 1051; Zacher v Niagara Frontier Servs., 210 AD2d 897, 897-898 [4th Dept 1994]), subsection (a)’s greater specificity or firmer mandate is imperceptible; if anything, subsection (b) (1) imposes a more concrete specification of safety and training (Walker v Metro-North Commuter R.R., 11 AD3d at 340; Reilly v Newireen Assoc., 303 AD2d at 218; Shields v General Elec. Co., 3 AD3d 715, 718 [3d Dept 2004]). Moreover, both the First and the Second departments dictate that subsection (a) is an insufficient standard to impose a duty under Labor Law § 241 (6) (Hassett v Celtic Holdings, 7 AD3d 364, 365 [1st Dept 2004]; Anarumo v Slattery Assoc., 298 AD2d 339, 340 [2d Dept 2002]; Phillips v City of New York, 228 AD2d 570, 572 [2d Dept 1996]; see Comes v New York State Elec. & Gas Corp., 82 NY2d at 878; Singleton v Citnalta Constr. Corp., 291 AD2d 393, 394 [2d Dept 2002]).
The only other applicable provisions, in 12 NYCRR 23-9.5 (c), require that “[e]xcavating machines shall be operated only by designated persons. ... No person other than the pitman and excavating crew shall be permitted to stand within the range of the back of a power shovel or within range of the swing of the dipper bucket while the shovel is in operation.” All the evidence suggests that Ochoa, the operator of defendant’s excavator, however inexperienced, untrained, or unheeded, was the *257 designated operator. All the evidence also suggests that plaintiff, while well within the excavator’s dangerous reach, was working where the excavator was excavating pits in the debris or ground and was part of the crew performing the work in which the excavator was engaged. Therefore, even had plaintiff identified this regulation, nothing indicates a violation.
Finally, plaintiffs failure to identify specific regulatory provisions in his complaint or bill of particulars would not necessarily be fatal if, without undue delay, unfair surprise, or other prejudice, he identified those provisions in opposition to defendant’s motion for summary judgment (Asaro v City of New York, 19 AD3d 167 [1st Dept 2005]; Walker v Metro-North Commuter R.R., 11 AD3d at 341; Padilla v Frances Schervier Hous. Dev. Fund Corp., 303 AD2d at 196 n 1; Baten v Wehuda, 281 AD2d 366 [1st Dept 2001]; see Reilly v Newireen Assoc., 303 AD2d at 218). Here, however, plaintiff fails to allege, even in opposition to defendant’s motion, any applicable regulation that defendant violated. Therefore the court must grant defendant summary judgment dismissing plaintiffs Labor Law § 241 (6) claim (Vaneer v 993 Intervale Ave. Hous. Dev. Fund Corp., 5 AD3d at 163; Reilly v Newireen Assoc., 303 AD2d at 218; Pesca v City of New York, 298 AD2d at 293; Fitzgerald v New York City School Constr. Auth., 18 AD3d at 808).
D. Labor Law § 200
To the extent Labor Law § 200 would provide plaintiff an alternative basis for liability beyond his other negligence claims, section 200 (1) requires that:
“All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein .... All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons.”
The Labor Law is chapter 31 of the consolidated laws. It governs conditions of various, but far from all, workplaces. They include building construction, demolition, and repair, in article 10; public work, in article 8; grade crossing elimination, in article 8-A; building service, in article 9; factories, in article 11; industrial homework, in article 13; mercantile establishments and restaurants, in article 14; mines, tunnels, quarries, and *258 compressed air, in article 15; places of public assembly, in article 17; work with explosives, in article 16; toxic substances, in article 28; and asbestos, in article 30.
Assessing the viability of any Labor Law claim, whether under section 200, section 241 (6), or another section, requires a threshold determination whether plaintiff was engaged in work entitled to protection under the Labor Law. The various articles listed above illustrate that section 200 protects broader categories of work than section 241 (6) protects: manufacturing in factories, under article 11, and work in restaurants, under article 14, for example (Jock v Fien, 80 NY2d 965, 967-968 [1992]; Mejia v Levenbaum, 30 AD3d 262 [1st Dept 2006]). Nonetheless, they also demonstrate that the only category where plaintiffs work conceivably falls is article 10, the same category section 241 (6) pertains to: building construction or demolition or excavation in connection with that construction or demolition.
Here, defendant does not dispute that the solid waste transfer station’s owner, Kids Waterfront, hired plaintiff to work at the waste transfer station as part of its operations and at tasks integral to the specific operations undertaken with the excavator. No evidence suggests his work was separate from the operations of the waste transfer station or the excavator or separate from the work of Kids Waterfront’s other employees. Even if plaintiff was not “an integral part of the work crew, full time on a daily basis,” the undisputed evidence shows, at minimum, that he was “performing work necessary and incidental to” those operations when he was injured (Longo v Metro-North Commuter R.R., 275 AD2d 238, 239 [1st Dept 2000]; see Spadola v 260/261 Madison Equities Corp., 19 AD3d 321, 323 [1st Dept 2005]; Agli v Turner Constr. Co., 246 AD2d 16, 21 [1st Dept 1998]). Therefore, if the waste transfer station or excavator was engaged in building demolition or in excavation in connection with that demolition, plaintiff is entitled to the Labor Law’s protection (Labor Law § 2 [5], [7]; Mordkofsky v V.C.V. Dev. Corp., 76 NY2d 573, 576-577 [1990]; Paradise v Lehrer, McGovern & Bovis, 267 AD2d 132, 134 [1st Dept 1999]; Blandon v Advance Contr. Co., 264 AD2d 550, 552 [1st Dept 1999]; Agli v Turner Constr. Co., 246 AD2d at 21). As long as his work related to the demolition or excavation work of the waste transfer station’s owner or the owner’s agent or was part of the owner’s or agent’s demolition or excavation operations, plaintiff was a worker covered by the Labor Law (Longo v Metro-North Com *259 muter R.R., 275 AD2d at 239-240; see Long v Battery Park City Auth., 295 AD2d 204 [1st Dept 2002]).
Even if plaintiff himself was performing routine maintenance at a demolition or excavation site or performing other tasks that were not actual demolition or excavation in isolation, his duties were directly related to that demolition or excavation process (Fitzpatrick v State of New York, 25 AD3d 755, 757 [2d Dept 2006]; see Blandon v Advance Contr. Co., 264 AD2d at 552; Agli v Turner Constr. Co., 246 AD2d at 24). These facts distinguish him from an employee who, although hired by the owner of the premises where the employee works or by the owner’s agent, is not involved with the construction, demolition, or excavation at the site and therefore not entitled to the Labor Law’s protection (Spadola v 260/261 Madison Equities Corp., 19 AD3d at 323; Long v Battery Park City Auth., 295 AD2d at 204; Valinoti v Sandvik Seamco, 246 AD2d 344, 345-346 [1st Dept 1998]; Somerville v Usdan, 255 AD2d 500, 501 [2d Dept 1998]). The evidence here demonstrates that if Kids Waterfront or its agent was engaged in demolition or excavation, plaintiff was injured while performing work integral to that demolition or excavation, rather than engaged in mere routine maintenance or other tasks outside the Labor Law’s scope (Spadola v 260/261 Madison Equities Corp., 19 AD3d at 323; Longo v Metro-North Commuter R.R., 275 AD2d at 239).
1. Demolition
The “demolition work” to which Labor Law § 200 applies is “work incidental to or associated with the total or partial dismantling or razing of a building or other structure” (12 NYCRR 23-1.4 [b] [16]). Defendant does not contend that the debris transported to and from and received and sorted at the waste transfer station was not from the demolition of buildings or other structures. Moreover, although the statute under which 12 NYCRR 23-1.4 (b) (16) is promulgated, Labor Law § 241 (6), appears to limit its applicability to building construction or demolition and to excavation in connection with building construction or demolition, its scope is not limited to building sites (Na-gel v D & R Realty Corp., 99 NY2d 98, 103 [2002]; Mosher v State of New York, 80 NY2d 286, 288-289 [1992]). The statute and regulation encompass any work “in connection with” or “in the context of construction, demolition or excavation at any site” (Nagel v D &R Realty Corp., 99 NY2d at 102-103).
Defendant simply emphasizes that its trucks transported construction or demolition debris to the waste transfer station, *260 which did not itself engage in the actual dismantling or razing of structures, but received and sorted the debris and transported it to a landfill. The issue is not limited, however, to whether plaintiff was engaged in demolition or even to whether Kids Waterfront or its agent was engaged in demolition. 12 NYCRR 23-1.4 (b) (16) includes “incidental” and “associated” work within the scope of “demolition work” (Pino v Robert Martin Co., 22 AD3d 549, 552 [2d Dept 2005]).
Apart from the applicable regulation, any determination whether particular work falls within the scope of construction, demolition, or excavation protected by the Labor Law depends on a “confluence of factors” and the full “context of the work” (Prats v Pori Auth. of N.Y. & N.J., 100 NY2d 878, 883 [2003]; see Nagel v D & R Realty Corp., 99 NY2d at 102; Fitzpatrick v State of New York, 25 AD3d at 757). This test requires an inquiry into whether the work (a) fell “into a separate phase easily distinguishable from other parts” of a larger demolition project and occurred after the demolition was completed or (b) was “ongoing and contemporaneous” with other work that formed part of a single demolition project or contract (Prats v Port Auth. of NY. & N.J., 100 NY2d at 881; Fitzpatrick v State of New York, 25 AD3d at 757; Lijo v City of New York, 31 AD3d 503 [2d Dept 2006]; see Pino v Robert Martin Co., 22 AD3d at 552). If plaintiff was a member of a team that undertook any activity within the scope of such a project or contract or was performing any duties ancillary to demolition or excavation, he is protected by the Labor Law (Prats v Port Auth. of N.Y. & N.J., 100 NY2d at 882; Fitzpatrick v State of New York, 25 AD3d at 757; Lijo v City of New York, 31 AD3d at 504).
It is inconsistent with the statutory framework to ignore this context of the work (Prats v Pori Auth. of N.Y. & N.J., 100 NY2d at 882; Fitzpatrick v State of New York, 25 AD3d at 757; Lijo v City of New York, 31 AD3d at 504). Yet defendant addresses none of the contextual questions necessary. Defendant ignores even the factors it considers relevant. It presents no evidence, for example, of where the demolition debris was transported from, whether that location or associated property was contiguous or otherwise close to the waste transfer station, or whether Kids Waterfront or its agent was associated with the structures being dismantled or their surrounding property, from which demolition debris was transported.
Nor does the evidence establish that the actual work performed at Kids Waterfront’s waste transfer station was not dem *261 olition itself. In fact, defendant does not dispute that both plaintiff and Ochoa were handling demolition material, plaintiff with his hands and Ochoa with the excavator, or that plaintiff was working with Ochoa, who was handling excavating equipment. At minimum, the defendant has not drawn any “bright line separating” their work from demolition or excavation (Beehner v Eckerd Corp., 3 NY3d 751, 752 [2004]; Lijo v City of New York, 31 AD3d at 504; see Pino v Robert Martin Co., 22 AD3d at 552). Instead, the evidence suggests that their work was a final phase of a demolition project, a phase that in itself also involved excavation (Lijo v City of New York, 31 AD3d at 504; see Pino v Robert Martin Co., 22 AD3d at 552).
2. Excavation
The “excavation work” to which Labor Law § 200 applies is the “removal of earth, rock or other material in connection with construction or demolition operations” (12 NYCRR 23-1.4 [b] [19]). The evidence consistently and unquestionably establishes that both plaintiff and Ochoa were removing earth, rock, and other materials, again plaintiff with his hands and Ochoa with the excavator. Nor does defendant dispute that the equipment used to perform the work at Kids Waterfront’s waste transfer station and to which plaintiff’s tasks related was an excavator.
Defendant describes plaintiffs and Ochoa’s work as moving demolition debris from demolition debris piles. This description is indistinguishable from “removal of. . . material” (12 NYCRR 23-1.4 [b] [19]). As plaintiff and Ochoa removed dirt, rock, and other material from a pile, they left a pit, hole, or depression in the pile. The excavator was equipped with a shovel and grapple that dug and grabbed this dirt, rock, and other material from the piles (see 12 NYCRR 23-9.5 [c]). It defies imagination to conceive of how this process was anything other than “excavation,” especially as so broadly defined in section 23-1.4 (b) (19) (see Ciancio v Woodlawn Cemetery Assn., 249 AD2d 86, 88 [1st Dept 1998]).
The only remaining issue is whether the very fact this “excavation” is admittedly of demolition debris connects the excavation “with . . . demolition operations” (12 NYCRR 23-1.4 [b] [19]). If not, then the determination reverts to the same contextual inquiry whether the handling of demolition debris at Kids Waterfront’s waste transfer station was- part of, ancillary to, or otherwise connected with demolition (Prats v Port Auth. of N.Y. & N.J., 100 NY2d at 881-883; Nagel v D & R Realty *262 Corp., 99 NY2d at 102; Fitzpatrick v State of New York, 25 AD3d at 757; Lijo v City of New York, 31 AD3d at 504). The evidence in the current record, at minimum, does not foreclose finding a sufficient connection with demolition or excavation operations.
3. Sanzo Enterprises’ Authority and Control Over the Excavator’s Operations
For the excavator’s undisputed owner, defendant Sanzo Enterprises, to be liable for a violation of Labor Law § 200, defendant must have had (1) authority or control over the work plaintiff was involved in when he was injured or over the conditions in which it was carried out or (2) notice of a hazard and sufficient authority or control to ensure the hazard was corrected (Rizzuto v L.A. Wenger Contr. Co., 91 NY2d at 352-353; Havlin v City of New York, 17 AD3d 172, 172-173 [1st Dept 2005]; Higgins v 1790 Broadway Assoc., 261 AD2d 223, 225 [1st Dept 1999]; Carballo v 444 E. 87th St. Owners Corp., 14 AD3d 526, 527 [2d Dept 2005]). Whether defendant qualifies as an agent of Kids Waterfront, the owner of the premises where plaintiff was working, is of no consequence for liability under section 200, since defendant may not be held vicariously Hable under that statute, unlike section 241 (6), regardless whether defendant exercised supervision or control over the work (see Walls v Turner Constr. Co., 4 NY3d 861, 863-864 [2005]; Blake v Neighborhood Hous. Servs. of N.Y. City, 1 NY3d 280, 293 [2003]; Russin v Louis N. Picciano & Son, 54 NY2d 311, 317-318 [1981]; Serpe v Eyris Prods., 243 AD2d 375, 379-380 [1st Dept 1997]).
The current record does not precisely define the relationship between Kids Waterfront and Sanzo Enterprises regarding the use of Sanzo Enterprises’ excavator on Kids Waterfront’s premises by and in close range of its employees. Nevertheless, Sanzo Enterprises does not dispute that, as the excavator’s owner, it retained the authority to deny that use at any time, under any circumstances. This authority placed the excavator’s owner squarely in the position both to permit the work involving the excavator to be carried out and to control its operation and limit the times and circumstances of that work (Havlin v City of New York, 17 AD3d at 172-173; Carballo v 444 E. 87th St. Owners Corp., 14 AD3d at 527; Bornschein v Shuman, 7 AD3d 476, 479 [2d Dept 2004]; Penta v Related Cos., 286 AD2d 674, 675 [2d Dept 2001]). The undisputed fact that defendant, as the excavator’s owner, had the authority, in permitting the excavator’s use, to insist that adequate safety practices be followed in its operation, or to stop the excavator’s unsafe use, *263 establishes the requisite basis for liability under Labor Law § 200 (Rizzuto v L.A. Wenger Contr. Co., 91 NY2d at 352-353; Havlin v City of New York, 17 AD3d at 172-173; Carballo v 444 E. 87th St. Owners Corp., 14 AD3d at 527; Beyea v Malcolm Pirnie, Inc., 298 AD2d 940, 940-941 [4th Dept 2002]).
Further, even if a supplier of work site equipment ordinarily would not be liable under the Labor Law, here that supplier’s principal, Carmine Sanzo, was regularly present at and involved in the work site operations and aware of hazardous conditions at the work site (Havlin v City of New York, 17 AD3d at 172; Spagnuolo v Pori Auth. of N.Y. & N.J., 8 AD3d 64, 65 [1st Dept 2004]; Murphy v Columbia Univ., 4 AD 3d 200, 201-202 [1st Dept 2004]; Higgins v 1790 Broadway Assoc., 261 AD2d at 225). Defendant maintains that Sanzo was working in his capacity as a Kids Waterfront employee whenever he was present at or involved in the waste transfer station’s operations. Although plaintiff disputes that Sanzo was working solely in that capacity and not on Sanzo Enterprises’ behalf for or with Kids Waterfront, even accepting defendant’s version, it establishes only that defendant may not have had the authority to control other hazardous work site conditions, apart from the excavator’s use. Defendant disputes neither that it transported demolition debris to the work site to be handled by defendant’s excavator, and thus to that extent worked for and with Kids Waterfront, nor, critically, that defendant had the authority to control the excavator’s use. Even though defendant may have had no control over plaintiff’s work, defendant would remain liable because plaintiffs injury arose not from his work methods, but from conditions occasioned by the excavator’s use, of which defendant was aware (Murphy v Columbia Univ., 4 AD3d at 202; Lynch v Abax, Inc., 268 AD2d 366, 367 [1st Dept 2000]; Higgins v 1790 Broadway Assoc., 261 AD2d at 225; Detraglia v Blue Circle Cement Co., 7 AD3d 872, 873-874 [3d Dept 2004]; see Piazza v Frank L. Ciminelli Constr. Co., Inc., 12 AD3d 1059, 1060-1061 [4th Dept 2004]).
In sum, while Sanzo may have shed his cloak as defendant’s principal in undertaking responsibilities for Kids Waterfront, he could not shed the cloak as principal of the excavator’s owner. When he performed his duties for Kids Waterfront, he positioned himself to know, in his capacity for defendant, the conditions under which its excavator was used (Spagnuolo v Port Auth. of N.Y. & N.J., 8 AD3d at 65; Detraglia v Blue Circle Cement Co., 7 AD3d at 873-874; Gonzalez v City of New York, 304 AD2d 709, *264 710-711 [2d Dept 2003]; Latino v Nolan & Taylor-Howe Funeral Home, 300 AD2d 631, 633 [2d Dept 2002]). Moreover, Sanzo was not simply in a position to observe the operations. Upon Ochoa’s complaint to Sanzo that the sun glare obstructed visibility when Ochoa operated the excavator, Sanzo Enterprises, even if not a contractor at the work site, acquired further notice of dangerous conditions, while retaining authority to control those operations (Gonzalez v City of New York, 304 AD2d at 710-711; Beyeg, v Malcolm Pirnie, Inc., 298 AD2d at 940-941).
Although Sanzo’s admission that Sanzo maintained and repaired the excavator as necessary fails to qualify expressly in what capacity he did so, unquestionably his own defendant corporation, as the excavator’s owner, always retained both the authority and the responsibility to maintain defendant’s equipment in a safe condition for whatever use the owner permitted. Consistent with this testimony, Ochoa also testified that he made his complaints concerning dangerous conditions and concerning the sun glare, in particular, to Sanzo, without specifying his capacity. The fact remains, nonetheless, that Ochoa was complaining to the principal of the responsible party, the owner Sanzo Enterprises.
Defendant thus has failed to show that it did not have authority and control over the safe use of the equipment and the safety of the conditions that caused plaintiffs injury (Lynch v Abax, Inc., 268 AD2d at 367; Higgins v 1790 Broadway Assoc., 261 AD2d at 225; Bornschein v Shuman, 7 AD3d at 479; Hennard v Boyce, 6 AD3d 1132, 1133 [4th Dept 2004]; see Piazza v Frank L. Ciminelli Constr. Co., Inc., 12 AD3d at 1061). If defendant retained that authority and control, defendant was responsible to prevent or remedy the excavator’s known hazardous use, to insist on safe operation, and to guard against unsafe operation, and is not relieved of liability for injuries caused by unsafe use or conditions over which defendant had authority (Rizzuto v L.A. Wenger Contr. Co., 91 NY2d at 353; Havlin v City of New York, 17 AD3d at 172-173; Gonzalez v City of New York, 304 AD2d at 711; Beyea v Malcolm Pirnie, Inc., 298 AD2d at 941; see Morales v Spring Scaffolding, Inc., 24 AD3d 42, 47-48 [1st Dept 2005]; Piazza v Frank L. Ciminelli Constr. Co., Inc., 12 AD3d at 1060-1061).
III. Conclusion
Consequently, the court grants defendant Sanzo Enterprises’ motion for summary judgment to the extent of dismissing *265 plaintiffs claim that defendant violated Labor Law § 241 (6). The court denies defendant’s motion insofar as it seeks summary judgment dismissing plaintiffs claims that defendant is liable (1) under Labor Law § 200, (2) under Vehicle and Traffic Law §§ 125 and 388 (1) for the unsafe operation of defendant’s motor vehicle, and (3) for negligently entrusting dangerous equipment to an untrained operator (CPLR 3212 [b], [e]).